Jason **STOGIERA,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–04–00675–CR.

Court of Appeals of Texas, San Antonio.

Nov. 23, 2005.

Adrienne Urrutia, San Antonio, for appellant.

Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

Jason Stogiera was convicted by a jury of criminal solicitation with the intent to commit aggravated sexual assault of a child and sentenced by the trial court to fifteen years imprisonment. On appeal, Stogiera contends: (1) the trial court erred in failing to conduct a hearing on his motion for new trial; (2) trial counsel rendered ineffective assistance of counsel; and (3) the evidence is legally and factually insufficient to support his conviction. Be-

cause Stogiera's motion for new trial raised issues that were not determinable from the record, the trial court abused its discretion in failing to grant Stogiera an evidentiary hearing. Accordingly, we abate the appeal and remand the cause to the trial court for an evidentiary hearing on Stogiera's motion for new trial. Even though we abate the appeal, we also address Stogiera's issue regarding the sufficiency of the evidence.

### SUFFICIENCY OF THE EVIDENCE

In his fourth issue, Stogiera contends that the evidence is legally and factually insufficient to support his conviction. In reviewing a legal sufficiency challenge, we view the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In conducting a factual sufficiency review, we view all the evidence in a neutral light and will set aside the verdict only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App.2004) (citing *Zuniga v. State*, 144 S.W.3d 477, 481 (Tex.Crim.App. 2004)). The jury evaluates the credibility and demeanor of witnesses and determines the weight afforded contradicting testimony. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997).

■ Stogiera contends that the evidence is insufficient because it fails to prove that he intended to act on the solicitation to commit the felony offense. Stogiera contends that the evidence establishes that he was fantasizing and his objective was not to have sex with a child.

Detective Anthony Smith received a telephone call from a female identified as Jackie who stated that she had come in contact with an individual through a telephone dating service who might be involved in criminal activity. The individual was later identified as Stogiera. Jackie agreed to tape record her conversations and later provided those tapes to the investigating detectives. After reviewing the tapes and the information provided by Jackie, the detectives believed Stogiera could be engaged in sex with his fifteen-month-old child. Jackie appeared to be concerned and agreed to continue recording the conversations. Eventually, Jackie set up a meeting with Stogiera at a restaurant. When Stogiera arrived for the meeting, he parked far away from the restaurant despite closer available parking. After Stogiera made contact with an undercover officer posing as Jackie, he was arrested.

While transporting Stogiera to the police station, Detective Michalec informed him that they had listened to tape recorded conversations between he and Jackie, whom Stogiera knew as Kendall. Detective Michalec further informed Stogiera that the conversations indicated that he and his wife were engaging in sex with their fifteen-month-old child. Detective Michalec told Stogiera that he was the subject of an ongoing investigation and that officers had been dispatched to his home to ascertain if any evidence of child molestation existed. Detective Michalec testified that a computer was seized by other officers which, he later discovered, did not contain any evidence.

Stogiera gave a voluntary statement after his arrest. In his statement, he admitted placing a greeting with Quest Personals stating that he was looking for "open-minded women who were into very kinky and taboo sexual subjects." A woman

named Kendall responded to his greeting. Stogiera made up that he had a fifteen-month-old and a four-year-old daughter. Stogiera told Kendall he was interested in a woman who would have sex with his fifteen-month-old daughter. Kendall asked what sexual acts he had performed on his daughter, and Stogiera described various sex acts. Stogiera asked if Kendall would be interested in allowing him to have sex with her two-year-old daughter. Stogiera and Kendall agreed to meet for a drink and get to know each other better. Stogiera would follow Kendall to her house and "see what came of it when we played with her daughter." When Stogiera approached a woman matching the description Kendall had given him, he was arrested.

Jackie Sellards testified that Stogiera identified himself as John on the dating service. Stogiera caught Jackie's attention with his greeting stating that he was interested in talking to women "who are interested in taboo and perverted things that are frowned on by society." Based on statements made by Stogiera during various conversations, Jackie was concerned that he was molesting his children. Jackie contacted child protective services, who advised her to contact the police. Jackie then contacted Detective Smith who asked if she could record her conversations with Stogiera. Jackie later turned the tapes over to the detectives. Jackie denied that there were gaps in the conversations on the tapes or that the tapes had been edited. The tapes were then played for the jury. Stogiera stated several times in the tapes that he was really serious. Stogiera volunteered the information regarding the sexual acts in which he engaged and in which he wanted to engage without prompting from Jackie. Stogiera also mentioned the possibility of going to prison for those actions. In discussing their meeting, Stogiera stated he was nervous and wanted to pat Jackie down to make sure she was not a cop and was not wired. Stogiera wanted to meet at the bar, go back to his car to pat Jackie down, and then go to her house to have sex with her daughter.

During cross-examination, Jackie was asked several questions regarding her active involvement in locating Stogiera for conversations. Jackie acknowledged making up information in her conversations to make Stogiera more comfortable. Jackie did not respond to defense counsel's question regarding whether she "repeatedly asked [Stogiera] to participate in this offense."

Officer Rosemary Flores, the undercover officer who posed as Kendall, testified that Stogiera approached her and asked if she was Kendall. They exchanged a brief conversation, and Stogiera said he needed to do the pat-down. Stogiera suggested going to Kendall's van for the pat-down to make sure she was not a cop. Although Flores assumed Stogiera would order a drink and perhaps they would order dinner, Stogiera did not order a drink or give any indication that he wanted to order dinner.

Based on the evidence presented, the jury could have believed that Stogiera intended to meet Jackie and return to her home to engage in sexual activity with her two-year-old daughter. Stogiera acknowledged that a plan was formulated on this basis, and Stogiera acted on the plan. Stogiera stated that he was aware of the possible criminal sanctions for his actions and expressed a desire to pat-down the undercover officer portraying "Kendall" to ensure that she was not a cop. The jury could have inferred that the pat-down would not have been necessary if Stogiera had not intended to engage in any criminal activity. Accordingly, the evidence is le-

gally and factually sufficient to support the conviction.

## MOTION FOR NEW TRIAL

In his first issue, Stogiera contends that the trial court erred in failing to conduct a hearing on his motion for new trial which clearly raised disputed factual issues requiring development. After judgment was entered, Stogiera hired new counsel to file a motion for new trial.

In his motion for new trial, Stogiera asserted ineffective assistance of counsel. Specifically, Stogiera asserted counsel failed to gather mitigating evidence by failing to: (1) investigate Stogiera's personal, familial, and psychological background; (2) inquire into Stogiera's mental health and sexual abuse history for purposes of understanding the actions leading to the charged offense; (3) question the psychologist who evaluated Stogiera on behalf of child protective services; and (4) determine whether an "Able Assessment" should be performed to ascertain Stogiera's future risk to the community and likelihood of improvement with sexual offender therapy and treatment. Stogiera asserted that by failing to engage in a reasonable investigation, defense counsel failed to obtain mitigating evidence that was otherwise available. Stogiera also asserted that trial counsel was ineffective in failing to call available expert witnesses to testify during the punishment hearing, specifically, Sue Jurecko and Dr. Mark Steege, both of whom evaluate sexual offenders for purposes of recommending treatment and punishment.

Attached to Stogiera's motion for new trial were several affidavits, including the affidavits of: (1) Ray Taylor, an attorney who is board certified in criminal law; (2) Mark W. Steege, a licensed clinical social worker and licensed professional counselor; (3) Sue Jurecko, a licensed profession-al counselor and licensed psychological assistant; (4) Dinah Dumais, Stogiera's mother; (5) Elizabeth Comer, Stogiera's grandmother; (6) Tina Freund, Stogiera's ex-wife; and (7) Betty Lou Schroeder, Ph. D., a licensed psychologist who the court appointed to evaluate Stogiera after judgment was entered and new counsel entered an appearance.

Ray Taylor stated a psychological evaluation should have been requested by trial counsel to determine if mitigating evidence existed for punishment and if evidence existed that would support Stogiera's "fantasy" defense. Taylor opined that trial counsel was ineffective in failing to obtain a psychological evaluation and report, called an Abel Assessment, and to introduce the report into evidence.

Mark W. Steege testified that he had several contracts with state and county entities to evaluate and treat sex offenders. Although Steege stated that he had not reviewed Stogiera's records, he testified that interviewing Stogiera would have enabled Steege to testify as to Stogiera's potential threat or danger to the community in general, his potential for rehabilitation, his acceptance of responsibility, and his potential for re-offending. At a minimum, Steege stated that an Abel Assessment, a clinic evaluation, a psychological evaluation, and a standard risk assessments test should have been performed. Steege then summarized what each test could show and each test's importance to punishment and treatment alternatives.

Sue Jurecko saw Stogiera in individual therapy for eight sessions while conducting her interviews for the child protective services investigation. During those sessions, Stogiera admitted the offense and took full responsibility. Stogiera showed appropriate remorse and guilt and did not minimize his aberrant behavior. Stogiera focused on learning about his cycle of deviancy and

gained insight into the behavior that led him to the offense. When CPS's investigation was closed, Stogiera voluntarily continued counseling with Jurecko, but the sessions ended when Stogiera did not have sufficient funds to pay. Jurecko stated that she would have been available to testify at Stogiera's punishment hearing if she had been called. Jurecko stated her professional opinion that Stogiera was not a risk to any child and would not reoffend.

Dinah Dumais stated that Stogiera had a troubled relationship with his biological father. During standard visitations beginning at the age of five, Stogiera's father forced him to watch pornographic movies. When Stogiera was sixteen, his father took him to Jamaica, got him drunk, and actively sought a prostitute for Stogiera. Furthermore, when Stogiera was five, a ten-year-old girl fondled him during a visitation with his father.

Elizabeth Comer stated that after making an inappropriate comment to her during a television movie, Stogiera confessed to her that he had been fondled at the age of five. He also told Comer that his father forced him to watch pornographic movies. Finally, Stogiera sought to borrow $2,000 from Comer to pay for a phone bill resulting from Stogiera's calling 900 numbers to engage in phone sex.

Tina Freund stated that Stogiera was a caring and loving father. Freund believed that Stogiera had self-esteem issues resulting from his relationship with his father and step-father. Stogiera told her that his father took him to Jamaica to "make a man out of him."

Stogiera was referred to Betty Lou Schroeder, Ph.D. for an evaluation after new counsel was retained. Schroder's affidavit included a summary of her evaluation. Schroder concluded, "There is rather overwhelming evidence that this man is not dangerous but would benefit from a strong treatment program."

 A defendant is entitled to a hearing on his motion for new trial if the motion and accompanying affidavits raise matters not determinable from the record, upon which the accused could be entitled to relief. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex.Crim.App.2003). To be sufficient to entitle the defendant to a hearing, the motion for new trial and accompanying affidavits need not establish a prima facie case for a new trial. *Id.* Rather, they must merely reflect that reasonable grounds exist for holding that such relief could be granted. *Id.* The purpose of the hearing is to give the defendant an opportunity to fully develop the matters raised in his motion. *Id.* If the trial court denies a hearing on the motion for new trial and the defendant appeals from that denial, the appellate court must review the trial court's decision for abuse of discretion. *Id.*

Only two witnesses were presented on Stogiera's behalf during the punishment phase of trial. One witness knew Stogiera through her son and stated he was not a danger to the community. On cross-examination, the witness stated that she was aware of the details of the offense for which Stogiera was convicted. The other witness, who was a family friend, also stated that Stogiera was not a danger to the community; however, on cross-examination, the witness was unaware of some of the details of the offense for which Stogiera was convicted. In addition to the two witnesses, trial counsel presented the judge with various letters from friends and families requesting leniency.

 The record in this case does not reveal why trial counsel did not pursue the psychological analysis which Jurecko, Steege, and Taylor all state would be critical in, at the very least, mitigating punish-

ment. Trial counsel has been held to be ineffective in failing to seek out, investigate, and interview available witnesses during the punishment phase. *Freeman v. State*, 167 S.W.3d 114, 120–21 (Tex.App.-Waco 2005, no pet.); *Milburn v. State*, 15 S.W.3d 267, 270 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). In this case the record shows that trial counsel was aware of Stogiera's counseling with Jurecko; however, the record is silent regarding the reason trial counsel failed to further pursue the psychological issue to mitigate punishment. Because we cannot determine from the record whether the failure to pursue the psychological evidence was part of counsel's trial strategy, the trial court was required to hold a hearing on Stogiera's motion for new trial in which the factual basis for his ineffective assistance of counsel claim could have been fully developed. *Rodriguez v. State*, 82 S.W.3d 1, 3–4 (Tex.App.-San Antonio 2001, pet. dism'd); *Mendoza v. State*, 935 S.W.2d 501, 503 (Tex.App.-Waco 1996, no pet.)

■■ The State asserts that the trial court was not required to hold a hearing on the motion because even if the allegations were true, the granting of a new trial would not be warranted. This assertion by the State appears to ignore the distinction between entitlement to a hearing on a motion for new trial and entitlement to a new trial. Whether a defendant is entitled to a hearing on a motion for new trial is a separate question from whether he should ultimately be granted a new trial. *Wallace*, 106 S.W.3d at 108; *see also Lemmons v. State*, No. 02–04–00086–CR, 2005 WL 1356270, at *1 (Tex.App.-Fort Worth June 9, 2005, no pet.) (not designated for publication). If a defendant's motion and affidavit are sufficient, a hearing on the motion is mandatory. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex.Crim.App.1994). In the case cited by the State, *Hernandez v. State*, 84 S.W.3d 26, 33 (Tex.App.-Texarkana 2002, pet. ref'd), the court held that a hearing was not required because the issue raised in the motion for new trial was determinable from the record. In this case, trial counsel's reasons for not pursuing and presenting the psychological evidence is not determinable from the record.

We stress the unique posture of the case before us. In his argument during the punishment phase of trial, trial counsel refers to Stogiera's counseling with Jurecko; accordingly, the record reflects that trial counsel had information that should have put him on notice of the psychological issue that the affidavits attached to the motion for new trial allege should have been further pursued. The record is silent, however, as to the reason the issue was not pursued. Absent a developed record, the merits of Stogiera's ineffective assistance of counsel complaints would not be "firmly founded in the record" and would not be reviewable on direct appeal. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App.1999); *see also Wiggins v. Smith*, 539 U.S. 510, 517–19, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (reviewing ineffective assistance of counsel complaint based on failure to perform adequate investigation in context of denial of postconviction relief where record contained testimony of trial counsel regarding intended strategy); *Freeman v. State*, 167 S.W.3d at 119 (finding ineffective assistance of counsel based on trial counsel's failure to perform an adequate investigation of the defendant's mental health history where record contained testimony of trial counsel developed at a hearing on motion for new trial).

## CONCLUSION

Because an evidentiary hearing should have been granted on Stogiera's motion for new trial, the appeal is abated, and the

cause is remanded to the trial court to conduct a hearing on Stogiera's motion for new trial. *Martinez v. State,* 74 S.W.3d 19, 22 (Tex.Crim.App.2002) (setting forth proper remedy). The trial court is directed to hold the hearing and to cause to be filed in this court a supplemental clerk's record containing the trial court's order on the motion for a new trial and a reporter's record containing a transcript of the hearing within ninety days from the date of this court's judgment.