Affirmed and Opinion filed October 21, 2008








Affirmed and Opinion filed October 21, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00775-CR

____________

 

LEE CHAPA SALINAS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th
District Court

Harris County, Texas

Trial Court Cause No. 1074104

 



 

O P I N I O N

Appellant, Lee Chapa Salinas, pleaded guilty to the felony
offense of aggravated sexual assault of a child.  The trial court found him guilty
and assessed punishment at twelve years= confinement.  In
two issues, appellant contends that (1) the trial court abused its discretion
in overruling his motion for new trial, and (2) he received ineffective assistance
of counsel because his counsel failed to adequately investigate and prepare for
the punishment hearing.  We affirm.








Background

Appellant pleaded guilty to unlawfully, intentionally, and
knowingly causing the mouth of complainantCwho was nine years
old at the timeCto contact appellant=s sexual organ on
December 31, 2005.  Appellant pleaded without an agreed recommendation
regarding punishment.  At the punishment hearing, Laura Salinas testified that
she married appellant in 2003 and that complainant was her child from a prior
marriage.  When Laura became pregnant with a child by appellant, complainant
began sleeping in the bed with them.  Complainant first made Laura aware of the
abuse in a handwritten note that said ALee touches me
where he=s not supposed to.@  Complainant then
indicated that appellant touched her vagina and that he told complainant not to
tell Laura.  According to Laura, she called the police about the abuse and then
confronted appellant.  He did not deny the conduct but instead said something
to the effect that: AIf I deserve going to jail, I guess that=s what I get
because I=m a bad person, I=ve ruined my
family.@  Appellant then
admitted to touching complainant but did not want to discuss any details before
he talked to an attorney.  He told Laura that she should have talked to him
first before involving the police.  A few days after the confrontation,
appellant bought Barbie dolls for complainant and left them in her room; Laura,
however, removed the dolls before complainant became aware of them.  Laura
expressed uncertainty as to whether she would remain married to appellant.

According to Laura, appellant subsequently confided to her
that he had oral sex with complainant.  Appellant stated that complainant
wanted to do it.  Appellant also admitted to hugging and kissing Alike lovers.@  At the time of
the hearing, complainant was undergoing therapy.  At some point, Child
Protective Services became involved with the family, primarily concerned about
appellant=s contact with the children and complainant=s well-being. 
When asked during cross-examination what she thought should happen to
appellant, Laura explained that sending him to jail would be very difficult on
the children and would adversely affect them financially.








Appellant also testified at the hearing.  He acknowledged
that while he immediately admitted inappropriate behavior, he was initially
less than completely forthcoming.  According to appellant, the abuse began when
complainant would get into bed with him and his wife.  He started by touching
her occasionally and later progressed to oral sex.  The abuse continued for
about one and a half to two years.  He said that he had no excuse for what
happened.  At the time of the hearing, he was attending weekly therapy
sessions, which have helped him to understand his behavior.  He also thinks
therapy could help prevent future occurrences.  He explained that he had
custody of two sons from a prior marriage, but CPS took custody of them after
appellant signed a confession.  He further said that he was not sexually
attracted to little girls prior to the time complainant began sleeping in his
bed.  Appellant=s employment supervisor also testified,
explaining that appellant would still be eligible to work for the company if
placed on probation.

Karen Lawson testified that she is a psychologist and the
director of the sexual abuse treatment program at Baylor College of Medicine. 
As of the date of the hearing, she had been treating appellant in the program
for almost eight months.  Appellant admitted his guilt to Lawson on their first
meeting, and he has not tried to blame his wife or complainant for the
behavior.  Lawson explained that sexual offenders often engage in Athinking errors@ in order to
continue their behavior and that part of therapy is helping patients to
recognize these Athinking errors.@  Lawson believes
that appellant feels remorse and that this led to a further thinking error,
which resulted in his attempting to give complainant gifts.  She explained that
offenders are never cured, but they can learn what barriers should not be
crossed as well as how to think differently in their interactions with
children.  Lawson said that appellant would be able to continue in the program
for years if placed on probation.








When asked specifically regarding the chances that
appellant might engage in this type of behavior again, Lawson opined that
appellant falls into the category of offenders with the lowest risk for Areoffense.@  She emphasized
that there is only one known victim and that appellant has taken
responsibility, is not a substance abuser, and has not engaged in other
aberrant sexual behaviors.  She concluded that he has the tools to successfully
complete probation.

During cross-examination, Lawson acknowledged that
appellant initially minimized the level of abuse, for example, by saying there
had been no oral sex.  She explained that this was not uncommon for sexual
offenders.  Lawson further agreed that there are limitations on the treatment
program such that she could not monitor what appellant was doing when not in
the once-a-week counseling sessions.  Also contained in the record from the
punishment hearing is much of Lawson=s file on
appellant=s treatment, including progress notes, personal and
family histories, and therapist comments and recommendations.

At the conclusion of the punishment hearing, the trial
court sentenced appellant to twelve years in prison.  Appellant subsequently
filed a motion for new trial, arguing that he received ineffective assistance
of counsel due to his counsel=s inadequate preparation for the
punishment hearing.  At a hearing on the motion, appellant introduced his own
affidavit, as well as a report and testimony from Dr. Jerome Brown and
additional testimony from Lawson.  The trial court denied the motion for new
trial.

In his affidavit, appellant averred that after he hired
trial counsel, the latter suggested that appellant enroll in a counseling
program.  While in the Baylor program, Lawson gave appellant a letter
concerning performance of a risk assessment (as requested by CPS).  Appellant
gave the letter to counsel, and counsel said that they would get such an
evaluation if needed.  Appellant said that he asked counsel about the
assessment on several occasions and Afollowed [counsel=s] directions.@








During the hearing on the motion for new trial, Brown
testified that he is a clinical psychologist involved in the treatment and
analysis of sexual offenders.  After sentencing, Brown conducted a risk
assessment of appellant, concluding that appellant did not demonstrate certain
risk factors such as drug or alcohol abuse, a history of having been molested
himself, certain attitudes that support sexual offenses, poor life management,
antisocial characteristics, or significant immaturity or impulsivity.  The
assessment also revealed that appellant does not have any Aspecial interest@ in children. 
According to Brown, appellant exhibited a great deal of openness about the
offense and took responsibility for it.  Brown called the offense an Aopportunistic
family-incest-type event,@ which he described as having
characteristics Avery different than the dynamics of the
pedophile.@  Brown concluded that appellant was in the lowest
category of offender in regards to likelihood to repeat the offense;
approximately one in ten offenders in that category will repeat their offense Ain some kind of
way.@  He indicated
that treatment could lower the odds even further.  Brown called appellant an
excellent candidate for probation.  He further asserted that the court had been
at a Agreat handicap@ in assessing
punishment in the absence of a risk assessment.  During cross-examination by
the prosecutor, Brown acknowledged that he could not guarantee appellant=s abstinence from
reoffense.  He further acknowledged that the assessment he performed did not
factor in the extent of the abuse to the particular victim or the number of
occurrences involving the victim.








Lawson also testified at the new trial hearing, asserting
that in her original testimony she had not been asked about her background in
the treatment of sex offenders.  She explained that she has been working with
such offenders for 20 years and has been director of the Baylor treatment
program for seven years.  She has testified for sex offenders approximately 40
to 50 times.  She further stated that she did not complete any type of formal
risk assessment on appellant, although she admitted that she did perform
several of the same psychological assessments on appellant as Dr. Brown did. 
Lawson drew a distinction between a risk assessment, undertaken to determine
the likelihood of further abuse, and an assessment for treatment, which seeks
to determine a patient=s ability to benefit from treatment.  She
further explained that she would not have been able to perform a risk
assessment on appellant because as his treating therapist, it would have been a
conflict of interest.  Because of this conflict, when CPS asked Lawson to
perform a risk assessment, she wrote back to explain why she could not and to
recommend other assessment providers, including Brown.  She believed that she
gave appellant a copy of this letter.

Regarding her contact with appellant=s trial counsel,
Lawson stated that she first met with counsel on November 1, 2006, the day of
the first court setting.  Although they spoke briefly that day, counsel did not
contact her again until the day of the punishment hearing on November 15. 
Counsel did not ask how treatment was progressing or for details of Lawson=s involvement with
appellant.  Counsel also did not request, and Lawson did not provide, a copy of
Lawson=s file, even
though it had been subpoenaed by and provided to the prosecutor.  Lawson
explained that defense lawyers typically contact her before hearings, and
although she asked appellant on two occasions to have his attorney call her,
counsel never did so.  The only phone conversation Lawson recalled with counsel
occurred when she called him to verify the time and place for the hearing. 
Lawson felt it was important for the court to know that appellant was an
excellent candidate for treatment and rehabilitation and thus probation.  She
was frustrated by the lack of preparation for the hearing, as it was not what
she was used to from prior proceedings.  Regarding her punishment hearing
testimony, Lawson said that she did the best she could with the questions asked
by both defense counsel and the prosecutor, although the prosecutor seemed much
better prepared and asked more specific questions.  Regarding her treatment
notes, which appear in the punishment record, Lawson explained that they
provided an overview of appellant=s participation in
treatment.  She provided these to appellant each month with instructions to
give them to defense counsel.








Lawson additionally listed a number of factors she sees as
demonstrating appellant=s favorable treatment prognosis, including
that he accepts responsibility, was remorseful, and does not minimize his
behavior; that he does not have any mental disorder preventing him from
benefitting from treatment; and that he was gainfully employed and enjoyed
family support.  She again placed appellant in the category of offenders with
the lowest likelihood of reoffending.  She stated that she normally would
discuss factors such as these with defense counsel before testifying, and she
felt counsel in the present case did not prepare thoroughly because he did not
sufficiently bring out these factors or specifics about Lawson=s experience and
training.

Lawson further opined that Dr. Brown=s assessment would
have been beneficial to the court because Brown is very thorough, experienced,
and unbiased, and because the results of Brown=s assessment again
put appellant in the category of offenders least likely to reoffend.  She also
explained that treatment for a sexual offender often continues through the
entirety of their probation.

On cross-examination by the State, Lawson acknowledged that
in the punishment hearing, she testified to appellant=s treatment
progress, likelihood for success, and the factors relevant thereto.  She
further acknowledged that she had spent a lot more time with appellant than
Brown had.  She stated that she shared Brown=s opinions
regarding appellant and had shared those opinions with the court in the
punishment hearing.  Appellant=s trial counsel did not testify at the
motion for new trial hearing.

Standards of Review








In his first issue, appellant contends that the trial court
abused its discretion in overruling his motion for a new trial because he was
denied effective assistance of counsel during the punishment hearing.  In his
second issue, appellant contends he was denied effective assistance of
counsel.  The Sixth Amendment to the United States Constitution guarantees the
right to reasonably effective assistance of counsel in criminal prosecutions. 
U.S. Const. amend. VI; McMann
v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In reviewing an ineffective
assistance claim, an appellate court Amust indulge a
strong presumption that counsel=s conduct [fell] within the wide range of
reasonable professional assistance; that is, [appellant] must overcome the
presumption that, under the circumstances, the challenged action might be
considered sound trial strategy.@  Strickland v.
Washington, 466 U.S. 668, 689 (1984).  Under the two‑pronged Strickland
test, in order to demonstrate ineffective assistance of counsel, a defendant
must first show that counsel=s performance was deficient, i.e.,
that his assistance fell below an objective standard of reasonableness; second,
a defendant must affirmatively prove prejudice by showing a reasonable
probability that, but for counsel=s unprofessional
errors, the result of the proceeding would have been different.  Thompson v.
State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  Any allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.  Id. at 813. 
Appellant bears the burden of proving by a preponderance of the evidence that
counsel was ineffective.  Id.  In the majority of cases, the record on
direct appeal is simply undeveloped and cannot adequately reflect the alleged
failings of trial counsel.  Jackson v. State, 973 S.W.2d 954, 957 (Tex.
Crim. App. 1998).  This is particularly true when the alleged deficiencies are
matters of omission and not of commission revealed in the record.  Id. 
A proper record is best developed in a habeas corpus proceeding or in a motion
for new trial hearing.  Jensen v. State, 66 S.W.3d 528, 542 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref=d).

Representation may fall beneath an objective standard of
reasonableness if counsel fails to conduct an adequate pretrial investigation. 
See Wiggins v. Smith, 539 U.S. 510, 521-22, 533-34 (2003).  Counsel has
a duty to make reasonable investigations or reasonable decisions that make such
investigations unnecessary.  Id. at 521-22.  A particular decision not
to investigate must be directly assessed for reasonableness under all the
relevant circumstances, allotting great deference to counsel=s judgments.  Id.
at  521-22, 533-34.

Analysis








Appellant specifically argues that his counsel=s investigation
and preparation for the punishment hearing was deficient because prior to the
hearing, counsel failed to:  (1) interview Dr. Lawson at length, (2) review
Lawson=s entire treatment
file, and (3) have a risk assessment conducted.  Appellant asserts that counsel
could not have made Aa legitimate assessment of the evidence@ without first
discovering the specifics of Lawson=s involvement with
appellant.  He further argues that while suitability for treatment is an
important consideration, a more important factor in determining whether and for
how long to sentence a defendant to prison is the risk that the defendant poses
to public safety.  Appellant maintains that had a risk assessment been
presented at the punishment hearing, Aa different result
might have occurred.@  According to appellant, a risk
assessment would have explained why community supervision was in appellant=s best interest
and why a twelve year prison sentence was inappropriate.

We begin our analysis by noting that appellant=s trial counsel
did not testify at the motion for new trial hearing; thus, we do not know
exactly what steps counsel took in preparation for the hearing or why he chose
not to have a formal risk assessment performed.  While the State subpoened and
received Lawson=s entire file, it is left unsaid in the
record whether defense counsel might have received a copy of that file from the
State.  Nonetheless, as the State points out, much of Lawson=s file was
contained in the presentence investigation report, a copy of which counsel
almost certainly received.  Furthermore, Lawson testified at the new trial
hearing that she gave copies of her treatment notes to appellant with
instructions to give them to his counsel.  Thus, counsel may (or may not) have
concluded that he had enough information regarding Lawson=s opinions of
appellant=s treatment and did not need to speak with her
in-depth before the hearing.  In such a vacuum of information regarding what
counsel knew and did, it is practically impossible to sit in judgment of his
actions.  See Jackson, 973 S.W.2d at 957.








On the face of the record before us, we cannot say that
counsel=s investigation
and preparation was inadequate.  Although, as Lawson suggested in her
testimony, the prosecutor may have asked more specific questions than defense
counsel in the punishment hearing, when pressed as to what she wished she had
been able to impart during that hearing that was not brought out, Lawson
principally said that she was not asked enough about her own qualifications and
experience.  Lawson, however, testified in the punishment hearing that she is a
psychologist and the director of the sexual abuse treatment program at Baylor
College of Medicine.  The length of her tenure at that position and the
specifics of her professional training and experience do not seem so relevant
to her testimony regarding appellant that a failure to bring them out rendered
trial counsel=s representation ineffective.  Also in her motion for
new trial testimony, Lawson acknowledged that at the punishment hearing, she
testified to appellant=s treatment progress, likelihood for
success, and the factors relevant thereto.  It thus appears that while trial
counsel did not speak with Lawson at length prior to the punishment hearing, he
was able to elicit from Lawson the most important information concerning
appellant=s treatment.








Regarding the failure to obtain a risk assessment prior to
the punishment hearing, we again note that we are without the benefit of
counsel=s explanation for
this decision.[1] 
Without specifically so stating, appellant=s arguments
suggest that in any case involving sexual assault of a child, defense counsel
must obtain a formal risk assessment or be deemed ineffective.  Appellant,
however, cites no authority supporting this proposition, and we have discovered
none.  Here, while the trial court did not have the benefit of a formal risk
assessment when determining appellant=s sentence, the
court was privy to Lawson=s testimony regarding the risk appellant
posed to the community.  Lawson=s conclusions in this regard are nearly
identical to those of Dr. Brown, who subsequently performed a risk assessment
on appellant.  Furthermore, Lawson has acknowledged that she administered many
of the same psychological assessments on appellant as did Dr. Brown.  She also
agreed that she has spent considerably more time with appellant than has
Brown.  In light of Lawson=s testimony at the punishment hearing, we
do not find that the failure to obtain a formal risk assessment dropped counsel=s performance
below the wide range of what is considered reasonable professional assistance. 
Thus, appellant has failed to prove by a preponderance of the evidence that his
trial counsel was ineffective.  See Strickland, 466 U.S. at 689. 
Furthermore, because appellant failed to prove that his counsel was
ineffective, the trial court did not err in denying his motion for new trial,
which was based solely on the alleged ineffectiveness of counsel.  Accordingly,
we overrule appellant=s two issues.

We affirm the trial court=s judgment.

 

 

/s/      Adele Hedges

Chief Justice

 

Judgment
rendered and Opinion filed October 21, 2008.

Panel
consists of Chief Justice Hedges and Justices Guzman and Brown.

Publish
C Tex. R. App. P. 47.2(b).









[1]  In Stogiera v. State,   191 S.W.3d 194 (Tex.
App.CSan Antonio 2005, no pet.), the defendant was
convicted of solicitation with intent to sexually assault a child.  On appeal,
he complained both that his trial counsel rendered ineffective assistance of
counsel and that the trial court erred in failing to conduct a hearing on his
motion for new trial.  Id. at 195.  The defendant specifically alleged
that counsel was ineffective for, among other things, failing to obtain a risk
assessment of future harm to the community.  Id. at 198-99.  Indeed,
despite the fact the defendant was in counseling at the time of the punishment
hearing, counsel did not present any expert evidence regarding his future
dangerousness, relying instead on friends of the family for such testimony.  Id.
at 199-200.  The court of appeals declined to hold that such failure was per se
ineffective assistance of counsel because the record before it contained no
explanation as to why trial counsel did not pursue any psychological analysis. 
Id. at 199-200.  Instead, the court reversed and remanded to the trial
court for a motion for new trial hearing.  Id. at 200-01.  On appeal
after remand, the appeals court held that the defendant=s right to effective assistance of counsel had not
been violated.  Stogiera v. State, No. 04-04-00675-CR, 2006 WL 3419778,
at *2-3 (Tex. App.CSan Antonio 2006, no pet.).