*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

# MEMORANDUM OPINION

No. 04-08-00326-CR

Robert Louis **CONSTANCE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 399th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-3199
Honorable Robert Barton, Judge Presiding[1]

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Karen Angelini, Justice
            Sandee Bryan Marion, Justice
            Phylis J. Speedlin, Justice

Delivered and Filed:   May 27, 2009

AFFIRMED

Robert Constance appeals his convictions by a jury for two counts of indecency with a child by contact and two counts of aggravated sexual assault of a child. The jury assessed Constance's punishment at 20 years confinement for each of his indecency with a child convictions and 40 years confinement for each of his aggravated sexual assault convictions. For each of the offenses

---

[1] Sitting for the Honorable Juanita Vasquez-Gardner.

Constance committed, the jury also fined him $10,000. Constance claims the evidence is factually insufficient to support his convictions and that the trial court erred in admitting a prosecutorial exhibit containing inadmissible hearsay statements. We affirm the judgment of the trial court.

## BACKGROUND

W.E.M. lived with her mother, Annelle, and her mother's boyfriend, Constance. After Constance moved in with Annelle and her daughter, W.E.M. began having problems at school. Specifically, W.E.M. started to act out and touch her classmates inappropriately. School officials became concerned with W.E.M.'s behavior and contacted Child Protective Services ("CPS"). CPS investigated the matter, but did not discover any evidence of sexual abuse. Constance continued to reside with Annelle and W.E.M. following CPS's investigation.

In late December 2005, W.E.M. disclosed to her mother that she had a secret about Constance. W.E.M. revealed to Annelle that Constance had made her perform oral sex on him. Annelle confronted Constance about what she had learned from her daughter, but Constance denied W.E.M.'s allegations. Constance further told Annelle that her daughter had walked in on him while he was masturbating one time and suggested W.E.M. may have learned about sex from her classmates. Although Annelle asked Constance to move out following the accusations by W.E.M., she did not report Constance's abuse of her daughter to police.

W.E.M. eventually revealed her secret to school officials, who immediately contacted CPS. The authorities were later contacted and Constance was arrested for sexually abusing W.E.M. Constance was then charged with committing indecency with a child by contact and aggravated sexual assault of a child in a multi-count indictment.

Constance pleaded not guilty and proceeded to a jury trial. The jury heard the testimony of several witnesses, including W.E.M. W.E.M. testified about the first time Constance sexually abused her. W.E.M. explained Constance called her into his bedroom one morning, where he was naked and waiting for her on his bed. W.E.M. testified she tried to walk away from Constance, but he grabbed her and placed her on the bed with him. Constance then made W.E.M. perform oral sex on him until he ejaculated. W.E.M. indicated Constance had made her perform oral sex on him and place her hands onto his penis on numerous other occasions.

W.E.M. testified her grandmother disliked Constance. Although her grandmother disliked Constance, W.E.M. stated her grandmother never told her to "tell lies about [Constance]." W.E.M. also stated her mother had not influenced her to "tell lies about [Constance]." According to W.E.M., "the stuff that [she was] telling the jury . . . is the stuff that really happened to [her]."

W.E.M.'s mother, Annelle, also testified at trial. Annelle stated she met Constance several years after W.E.M.'s father had died. She indicated Constance moved in with her after a couple of months of dating. Annelle testified W.E.M.'s grandmother moved out of her home after Constance began residing in the home because she disliked Constance. Annelle stated W.E.M.'s grandmother expressed concerns about Constance after he got upset and refused to let her take W.E.M. to visit her cousins. Annelle admitted she initially had a hard time believing Constance had abused her daughter, but stated she ultimately believed W.E.M. because her daughter "could not come up with those details without having experienced it."

Several individuals from W.E.M.'s school also testified at trial. These witnesses testified about their observations of W.E.M. at school as well as their concerns about W.E.M.'s relationship with Constance. The State also presented the testimony of Dr. Nancy Kellogg, the medical director

of an organization that provides services to the victims of sexual abuse. Dr. Kellogg's testimony essentially provided the jury with details about W.E.M.'s medical examinations following her outcry.

Lastly, the jury heard Constance testify in his own defense. Constance testified he neither caused W.E.M. to have contact with his penis nor inserted his penis into her mouth. According to Constance, he believed W.E.M.'s grandmother coached W.E.M. to raise the abuse allegations against him. He admitted W.E.M. witnessed him masturbating, but claimed she did not see him manipulating his penis. Constance stated he covered himself upon W.E.M. surprising him, and had a discussion with W.E.M. about the "birds and bees" following the incident. Although he had a discussion about sex with W.E.M., Constance stated he never spoke to her about oral sex or how masturbation is accomplished.

Following the testimony presented, the jury found Constance guilty of two counts of indecency with a child and two counts of aggravated sexual assault of a child. The jury assessed punishment at 20 years confinement for each of the indecency counts and 40 years confinement for each count of aggravated sexual assault. The jury also assessed a $10,000 fine for each of Constance's offenses. The trial court ordered Constance's sentences to run concurrently, and this appeal followed.

### SUFFICIENCY OF THE EVIDENCE

Constance claims the evidence is factually insufficient to support his convictions for indecency with a child by contact and aggravated sexual assault. He points out that the only direct evidence against him is the testimony provided by W.E.M., whose grandmother disliked him and had motive to persuade W.E.M. to fabricate her testimony. Constance argues the lack of evidence corroborating W.E.M.'s testimony calls the validity of his convictions into question.

When considering a factual sufficiency challenge, we look at the evidence in a neutral light giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We reverse only if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust or if the evidence supporting the verdict is outweighed by the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the mouth of a child by the sexual organ of the actor and the child is younger than fourteen years of age. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii); (2)(B) (Vernon 2003). A person commits the offense of indecency with a child if, with a child younger than 17 years and not the person's spouse, he engages in sexual contact with the child or causes the child to engage in sexual contact. *Id.* § 21.11(a)(1). "Sexual contact" means any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id.* at (c)(2).

W.E.M. testified Constance would make her perform oral sex on him and cause her hands to contact his penis. She further testified about multiple instances of misconduct by Constance. As factfinder, the jury balanced W.E.M.'s testimony and demeanor with Constance's testimony and demeanor when he denied any possible sexual misconduct on his part. The jury was in the best position to evaluate the credibility of the witnesses and was entitled to resolve any credibility issues against Constance. *See Lancon*, 253 S.W.3d at 705; *see also Stogiera v. State*, 191 S.W.3d 194, 196 (Tex. App.—San Antonio 2005, no pet.) (recognizing the jury evaluates the credibility and demeanor of witnesses and determines the weight afforded contradicting testimony). Although Constance

complains about the State's failure to present any evidence to corroborate W.E.M.'s allegations, there is no requirement that a child victim's testimony be corroborated. It is well settled "[t]he testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault or indecency with a child." *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). Viewing the evidence in a neutral light, we cannot say the evidence is so weak that the verdict seems clearly wrong or manifestly unjust or that the proof of guilt is against the great weight and preponderance of the evidence. We therefore conclude the evidence is factually sufficient to support Constance's convictions and overrule Constance's first appellate issue.

### ERRONEOUS ADMISSION OF EVIDENCE

Constance also contends the trial court erred in admitting a prosecutorial exhibit containing inadmissible hearsay evidence. Specifically, Constance complains about the admission of State's Exhibit 4, which are records of the examinations performed by medical personnel following W.E.M.'s outcry. Constance objected to the trial court's admission of W.E.M.'s medical records because they referred to the statements W.E.M. made to medical personnel about Constance's sexual misconduct.

We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Under an abuse of discretion standard of review, we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* In addition, we "must review the trial court's ruling in light of what was before the trial court at the time the ruling was made." *Id.*

"Statements by a suspected victim of child abuse about the cause and source of the child's injuries are admissible under an exception to the rule against hearsay pursuant to Texas Rules of

Evidence 803(4)," which provides an exception to the hearsay rule for "[s]tatements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." *Green v. State*, 191 S.W.3d 888, 895 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). To qualify for this exception, the suspected child abuse victim must understand the importance of being truthful with medical personnel. *Id.* at 896. Courts should therefore "consider whether the child had an appreciation for why the statements were made" when determining the applicability of this hearsay exception. *Id.*

Here, the record shows that when W.E.M. met with medical personnel following her outcry, she acknowledged she was there because "[Constance] did something bad to me . . . he made me suck his peepee." She also acknowledged to medical personnel that she was told by Constance not to tell anyone about their sexual activities because he could go to jail if she did. This evidence is sufficient to support a finding that W.E.M. understood the need to be truthful. Accordingly, we conclude the statements contained within State's Exhibit 4 comply with Rule 803(4) and hold the trial court did not abuse its discretion in admitting the evidence. Constance's second appellate issue is therefore overruled.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice

Do not publish