

Court Of Appeals

Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★



★ ★ ★

## MEMORANDUM OPINION

No. 04-09-00250-CR

Dino Greg **KACHOIAN**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2008-CRS-000369-D4
Honorable Mark Luitjen, Judge Presiding[1]

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Marialyn Barnard, Justice

Delivered and Filed:   May 12, 2010

AFFIRMED

A jury found Dino Kachoian guilty of two counts of aggravated sexual assault of a child, and

the trial court sentenced him to concurrent 45-year terms of imprisonment.  We affirm.

---

[1] Sitting by assignment.

## BACKGROUND

The complainant, Jackie, was approximately six-years old when she alleged Kachoian, her biological father, sexually abused her.[2]  Jackie is a special needs child who requires speech and occupational therapy.  Jackie's full scale intelligence quota is 70, which is lower than 98 percent of the population.

An aide from Jackie's school observed Jackie masturbating and reported the incident to the child's kindergarten teacher.  Jackie's teacher spoke with the child about the incident and discovered Kachoian had committed improper sexual acts with his daughter.  Following Jackie's statements, Child Protective Services and the police were notified.

Jackie was subsequently taken to the hospital for a medical evaluation.  Although the Sexual Assault Nurse Examiner did not find any signs of trauma to Jackie's vagina, she saw Jackie's anus dilate rapidly and observed a scar near the child's anus.  Jackie also spoke with a psychologist and a forensic interviewer following her allegations of abuse.  The child reported multiple acts of sexual abuse by Kachoian, including instances where Kachoian penetrated her anus and vagina with his hand and penis.  Kachoian was indicted for two counts of aggravated sexual assault of a child based upon his alleged anal and vaginal penetration of his daughter.  He pleaded not guilty to the charged offenses and proceeded to a jury trial.

At trial, Jackie's kindergarten teacher, Julia Cantu, testified she learned from an aide that Jackie was masturbating at school.  Cantu spoke with Jackie about the incident and inquired about why she was touching her body in such a manner.  When the child did not respond to Cantu's question, Cantu asked Jackie, "Who does it?"  Jackie responded, "My daddy."  Cantu questioned

---

[2] To protect the identity of the victim, we will refer to the child as "Jackie."

Jackie further and asked the child, "When?" In response, Jackie answered "Now" and "You know, when I get home from school." Jackie demonstrated to Cantu how she was touched by her father by placing her hand on her vagina and "rocking [her pelvis] back and forth, doing some movements." Jackie further told Cantu her father had kissed her on the lips.

An investigative supervisor from the Texas Department of Family and Protective Services, Griselda Lerma, testified she spoke with Kachoian following Jackie's allegations of abuse. Lerma stated Kachoian denied abusing his daughter and began crying when she confronted him about Jackie's allegations. She noted Kachoian reported that he may have accidently touched Jackie when he was bathing the child and that "if he did that, he was sorry."

The State introduced a videotaped interview between Jackie and Lupita Martinez, a forensic interviewer with the Children's Advocacy Center. On the videotape, Jackie told Martinez she felt uncomfortable when her father touched her "colita," a word Jackie used for both "penis" and "vagina." Jackie informed Martinez that Kachoian used his penis to touch her "colita." When asked by Martinez "how does it feel when he puts his colita in your colita?" Jackie replied "[b]ad." Using anatomically correct dolls to describe various events, Jackie also reported to Martinez that Kachoian touched her "in [the] butt" and that Kachoian's penis would "spit" on her. After the videotape was played to the jury, Martinez testified about Jackie's allegations of abuse. Martinez informed the jury that Jackie "pointed to her vagina" when describing Kachoian's acts and stated "dad touched her vagina with his penis."

The jury also heard testimony from the Sexual Assault Nurse Examiner who examined Jackie, America Garza. Nurse Garza testified she examined Jackie and learned from the child that her "butt" hurt. Jackie reported to Nurse Garza that Kachoian had touched her "butt" and vagina

with his hand. Nurse Garza testified she did not observe any evidence of physical trauma to Jackie's vagina, but observed evidence of trauma to the child's anus. According to Nurse Garza, she observed a .5 centimeter healing tear located at the six o'clock position of Jackie's anus. Nurse Garza also observed Jackie's anus dilate 1.25 centimeters in less than eight seconds after placing the child in a prone knee chest position. Nurse Garza noted she observed a small amount of stool in Jackie's anus during her examination.

Dr. Amando Garza, a pediatrician, informed the jury that he is "very suspicious of sexual molestation" as to Jackie. He testified it is common to find no sign of physical trauma in a sexual abuse case. Dr. Garza explained to the jury that children who have had anal penetration commonly have anal tears, like Jackie, between the three o'clock and nine o'clock positions of the anus. He acknowledged that a sexual abuse victim's anus generally dilates about 2 centimeters, whereas Jackie's dilated only about 1.25 centimeters. Although Jackie's anal dilation measured 1.25 centimeters, Dr. Garza explained that it is very difficult to get an accurate measurement regarding a child's anal dilation. Finally, Dr. Garza opined the residual stool observed in Jackie's anus did not cause her anus to dilate when the child was placed in the prone knee chest position. He testified he "would be very suspicious of child abuse" if a child's anus, like Jackie's, dilated in less than eight seconds.

Dr. Gregorio Pina, a psychologist who specializes in the treatment of abused children, testified about his evaluation and treatment of Jackie following her allegations of abuse. Dr. Pina testified Jackie exhibited behaviors consistent with other sexual abuse victims.[3] He stated Jackie

---

[3] Some of these symptoms include: anxiety; masturbation; hyper-vigilance; sleeping problems; unusual fear of men; advanced knowledge of sexual matters; and explosive behavior.

reported that Kachoian had used his hand to touch her vagina and his penis to touch her anus and vagina. Dr. Pina testified the child described her father's penis as rough on her vagina. He stated Jackie performed a "[p]elvic thrusting" motion as she told him about her father's conduct, "suck[ing] her stomach in and let[ting] it out as part of th[e] thrusting." Dr. Pina testified Jackie told him she feared her mother "would find out about her father putting her colita in his front colita and then rubbing it." Jackie further told Dr. Pina about mouth to mouth kissing with her father and that Kachoian had licked and kissed her vagina as well. Dr. Pina stated he met with Jackie for approximately six sessions and that the child remained consistent with her allegations during those meetings.

Maria Merino, Jackie's mother, testified her daughter is afraid of Kachoian and does not want to see him. Merino stated her daughter began to tremble and grabbed her hand when she saw her father at the mall during the summer of 2008.

Jackie was allowed to testify via closed circuit television during trial. Jackie stated she was female and then identified her private parts. Although Jackie had previously reported to multiple persons that Kachoian had engaged in inappropriate behavior, she recanted her prior statements at trial. During trial, Jackie was asked, "Did your dad ever do anything to your private parts?" and "Has your dad ever done anything bad to you?" Contrary to her prior statements, Jackie replied "[n]o." The child further testified that she is afraid of Kachoian.

Although Kachoian did not testify during trial, he presented the testimony of a pediatrician, Dr. Charles Hyman. Dr. Hyman indicated he reviewed photographs of the alleged victim, read the child's medical/psychological reports, and watched her forensic interview. He opined the anal dilation observed by Nurse Garza is not necessarily an indication of sexual abuse because such

dilation may occur "in the normal population" or if there is a stool present in the anus. Dr. Hyman disagreed with Nurse Garza's observation of a healing anal tear, stating that Garza misinterpreted the muscle tissue surrounding Jackie's anus. He further noted that even if Jackie did have an anal scar, approximately 2 percent of non-abused children have such scars.

After hearing the evidence, the jury found Kachoian guilty of two counts of aggravated sexual assault of a child. The trial court subsequently sentenced Kachoian to concurrent 45-year terms of imprisonment. This appeal followed.

### SUFFICIENCY OF THE EVIDENCE

In his fourth issue, Kachoian claims the evidence is factually insufficient to support his convictions for aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B) (Vernon Supp. 2009) (providing that a person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means and the child is younger than fourteen years of age). When considering a factual sufficiency challenge, we look at the evidence in a neutral light giving almost complete deference to the jury's determinations of credibility. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We reverse only if the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust or if the evidence supporting the verdict is outweighed by the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). This court measures the factual sufficiency of the evidence against the elements of an offense as defined by a hypothetically correct jury charge. *Wooley v. State*, 273 S.W.3d 260, 268 (Tex. Crim. App. 2008).

The victim's description of what occurred does not need to be precise, and wide latitude is given to the statements of a child victim of sexual abuse. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). The prosecution may prove penetration by circumstantial evidence, and there is no requirement that the child victim be able to testify as to penetration. *Id.* at 133. "Proof of penetration, however slight, is sufficient so long as it is shown by proof beyond a reasonable doubt." *Rodriguez v. State*, 762 S.W.2d 727, 732 (Tex. App.—San Antonio 1988), *pet. dism'd*, *improvidently granted*, 815 S.W.2d 666 (Tex. Crim. App. 1991).

When all of the evidence is viewed in a neutral light in this case, we cannot say the jury's findings are clearly wrong or manifestly unjust or that they are against the great weight and preponderance of the evidence. The record shows the jury viewed the videotape of Jackie's forensic interview wherein she details the sexual acts committed by her father. The jury heard Jackie's statement regarding Kachoian's use of his penis to touch her "colita" and her response to Martinez's question that it felt "bad" when her father "puts his colita in your colita." It also heard Jackie inform Martinez that Kachoian touched her "in [the] butt" and that his penis would "spit" on her.

The record demonstrates the statements Jackie made during her forensic interview concerning vaginal and anal penetration are consistent with the statements she made to her psychologist. Dr. Pina testified the child reported that Kachoian used his penis to touch her anus and vagina. He stated Jackie described her father's penis as rough on her vagina, and much like she did when discussing her father's conduct with her teacher, Jackie acted out a pelvic thrusting motion to explain her father's conduct. Dr. Pina testified Jackie feared her mother "would find out about her father putting her colita in his front colita and then rubbing it." In addition, the jury heard Dr. Pina testify that

Jackie exhibited symptoms consistent with those of other sexual abuse victims, including: self-stimulation; fear of men; advanced knowledge of sexual matters; and hyper-vigilance.

The record also shows Jackie's allegations of abuse are consistent with the medical examination conducted by Nurse Garza. Jackie's medical examination revealed a rapidly dilating anus as well as a healing anal tear. The pediatrician who interpreted the results of the examination, Dr. Garza, testified Jackie's healing anal tear and immediate dilation of her anus are consistent with penetration trauma. Dr. Garza testified Jackie's exam results made him "very suspicious of sexual molestation."

To undermine the jury's verdict, Kachoian cites Jackie's recantation of her allegations of abuse at trial. Although Jackie denied on direct examination that Kachoian had engaged in inappropriate behavior, the jury heard Dr. Pina testify Jackie's recantation was the result of her having a psychosis and just shutting down at trial. The jury, as the trier of fact, was free to disbelieve Jackie's trial recantation and to rely on her prior statements concerning her father's abuse. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (holding trier of fact is free to disbelieve a complainant's trial recantation).

Kachoian also argues the jury should have discredited Jackie's statements to Martinez because of the manner in which Martinez conducted her forensic interview. The record shows Martinez was subject to cross-examination about her investigatory technique and whether she made any errors during her interview of the victim. We are obligated to defer to the jury's determination of Martinez's credibility and whether the statements Jackie made to her are credible and worthy of belief. *See Lancon*, 253 S.W.3d at 704-05; *Stogiera v. State*, 191 S.W.3d 194, 196 (Tex. App.—San Antonio 2005, no pet.).

Kachoian further contends Dr. Hyman's testimony concerning Jackie's medical examination undermines the conclusion that anal penetration had occurred. The contravening evidence cited by Kachoian merely created a fact issue for the jury. As previously emphasized, this court must defer to the jury's findings and may not substantially intrude on the fact finder's role as the sole judge of the weight and credibility of the witnesses. *See Lancon*, 253 S.W.3d at 704-05; *Stogiera*, 191 S.W.3d at 196. The jury had the opportunity to hear the conflicting medical testimony as well as the testimony of the State's witnesses. It was able to observe the demeanor of the witnesses and judge their credibility. Because we will not usurp the function of the jury, we must reject Kachoian's complaint on appeal. *See Roise v. State*, 7 S.W.3d 225, 233 (Tex. App.—Austin 1999, pet. ref'd) ("'A decision is not manifestly unjust because the jury [or fact finder] resolved conflicting views of the evidence in favor of the State.'"). Kachoian's fourth issue is overruled.

## CONFRONTATION CLAUSE

In his first issue, Kachoian argues the trial court violated his right of confrontation when it allowed the State to introduce the videotape of Jackie's forensic interview. Kachoian, however, did not object to the admission of the videotape when it was introduced at trial. Kachoian's failure to timely object waived any error in the admission of the videotape. *See Wright v. State*, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000) (holding appellant's failure to raise Confrontation Clause objection at trial waived the challenge on appeal); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (holding failure to object at trial waived any claim on appeal that admission of videotape evidence violated appellant's rights of confrontation and due process); *Acevedo v. State*, 255 S.W.3d 162, 173 (Tex. App.—San Antonio 2008, pet. ref'd) ("To preserve denial of a right to confrontation

error, one must specifically object based on the Confrontation Clause."). Kachoian's first issue is overruled.

## EXPERT TESTIMONY

In his third issue, Kachoian complains the trial court erred in allowing Dr. Pina to testify about the truthfulness of the victim. Although Kachoian objected to Dr. Pina's testimony as "repetitive," he did not object on the basis that Pina's testimony constituted an impermissible comment on the truthfulness of the victim. "To preserve error, the complaint on appeal must comport with the objection lodged in the trial court." *Long v. State*, 130 S.W.3d 419, 429 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Kachoian has failed to preserve this issue for appellate review because his complaint on appeal is different from his objection at trial. *See Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (citations omitted) ("'An objection stating one legal theory may not be used to support a different legal theory on appeal.'"). Kachoian's third issue is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Kachoian alleges defense counsel rendered ineffective assistance when he failed to object to the introduction of the videotape of Jackie's forensic interview. A defendant is entitled to effective assistance of counsel under both the United States and Texas Constitutions. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. The right to effective assistance of counsel does not guarantee a defendant errorless representation; instead, it affords the defendant an attorney who is reasonably likely to render effective assistance. *Moore v. State*, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985). To establish ineffective assistance of counsel, the appellant must show defense counsel's assistance fell below an objective professional standard of reasonableness and counsel's

actions thereby prejudiced appellant's defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). In order to establish prejudice, an appellant must show, by a preponderance of the evidence, that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

When reviewing an ineffective assistance claim, "[a]n appellate court looks to the totality of the representation and the particular circumstances of each case." *Thompson*, 9 S.W.3d at 813. There is a strong presumption that defense counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* To defeat this presumption, the "record must affirmatively demonstrate the alleged ineffectiveness." *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Direct appeal is usually an inadequate vehicle for raising an ineffective assistance of counsel claim because the record is generally undeveloped. *Thompson*, 9 S.W.3d at 813-14. Moreover, "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

Kachoian did not file a motion for new trial. As a result, defense counsel's reasoning for failing to object to the admission of the videotape evidence does not appear in the record. Counsel's conduct in connection with the videotape could have been part of a reasonable trial strategy. *See Garza v. State*, 213 S.W.3d 338, 347-48 (Tex. Crim. App. 2007) (recognizing trial counsel's failure to object to hearsay testimony that allegedly violated the Confrontation Clause could have been grounded in legitimate trial strategy); *see also McKinny v. State*, 76 S.W.3d 463, 473 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (noting, in context of ineffective assistance claim, "advocates must be free to choose not to make [objections] even if they have a legal basis for doing

so"). Without more, we must defer to the decisions of defense counsel and conclude Kachoian has not overcome the strong presumption that counsel's conduct was reasonable. Kachoian's second issue is overruled.

### CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH