Lee Chapa SALINAS, Appellant

v.

The STATE of Texas, Appellee.

No. 14–07–00775–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 21, 2008.

Stanley G. Schneider, Schneider & McKinney, P.C., Houston, TX, for Appellants.

William J. Delmore III, State of Texas, District Attorney's Office, Harris County, Houston, TX, for State.

Panel consists of Chief Justice HEDGES and Justices GUZMAN and BROWN.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Lee Chapa Salinas, pleaded guilty to the felony offense of aggravated sexual assault of a child. The trial court found him guilty and assessed punishment at twelve years' confinement. In two issues, appellant contends that (1) the trial court abused its discretion in overruling his motion for new trial, and (2) he received ineffective assistance of counsel because his counsel failed to adequately investigate and prepare for the punishment hearing. We affirm.

### Background

Appellant pleaded guilty to unlawfully, intentionally, and knowingly causing the mouth of complainant—who was nine years old at the time—to contact appellant's sexual organ on December 31, 2005. Appellant pleaded without an agreed recommendation regarding punishment. At the punishment hearing, Laura Salinas testified that she married appellant in 2003 and that complainant was her child from a prior marriage. When Laura became pregnant with a child by appellant, complainant began sleeping in the bed with them. Complainant first made Laura aware of the abuse in a handwritten note that said "Lee touches me where he's not supposed to." Complainant then indicated that appellant touched her vagina and that he told complainant not to tell Laura. According to Laura, she called the police about the abuse and then confronted appellant. He did not deny the conduct but instead said something to the effect that: "If I deserve going to jail, I guess that's what I get because I'm a bad person, I've ruined my family." Appellant then admitted to touching complainant but did not want to discuss any details before he talked to an attorney. He told Laura that she should have talked to him first before involving the police. A few days after the confrontation, appellant bought Barbie dolls for complainant and left them in her room; Laura, however, removed the dolls before complainant became aware of them. Laura expressed uncertainty as to whether she would remain married to appellant.

According to Laura, appellant subsequently confided to her that he had oral sex with complainant. Appellant stated that complainant wanted to do it. Appellant also admitted to hugging and kissing "like lovers." At the time of the hearing, complainant was undergoing therapy. At some point, Child Protective Services became involved with the family, primarily concerned about appellant's contact with the children and complainant's well-being. When asked during cross-examination what she thought should happen to appellant, Laura explained that sending him to jail would be very difficult on the children and would adversely affect them financially.

Appellant also testified at the hearing. He acknowledged that while he immediately admitted inappropriate behavior, he was initially less than completely forthcoming. According to appellant, the abuse began when complainant would get into bed with him and his wife. He started by touching her occasionally and later progressed to oral sex. The abuse continued for about one and a half to two years. He said that he had no excuse for what happened. At the time of the hearing, he was attending weekly therapy sessions, which have helped him to understand his behavior. He also thinks therapy could help prevent future occurrences. He explained that he had custody of two sons from a prior marriage, but CPS took custody of them after appellant signed a confession. He further said that he was not sexually attracted to little girls prior to the time complainant began sleeping in his bed. Appellant's

employment supervisor also testified, explaining that appellant would still be eligible to work for the company if placed on probation.

Karen Lawson testified that she is a psychologist and the director of the sexual abuse treatment program at Baylor College of Medicine. As of the date of the hearing, she had been treating appellant in the program for almost eight months. Appellant admitted his guilt to Lawson on their first meeting, and he has not tried to blame his wife or complainant for the behavior. Lawson explained that sexual offenders often engage in "thinking errors" in order to continue their behavior and that part of therapy is helping patients to recognize these "thinking errors." Lawson believes that appellant feels remorse and that this led to a further thinking error, which resulted in his attempting to give complainant gifts. She explained that offenders are never cured, but they can learn what barriers should not be crossed as well as how to think differently in their interactions with children. Lawson said that appellant would be able to continue in the program for years if placed on probation.

When asked specifically regarding the chances that appellant might engage in this type of behavior again, Lawson opined that appellant falls into the category of offenders with the lowest risk for "reoffense." She emphasized that there is only one known victim and that appellant has taken responsibility, is not a substance abuser, and has not engaged in other aberrant sexual behaviors. She concluded that he has the tools to successfully complete probation.

During cross-examination, Lawson acknowledged that appellant initially minimized the level of abuse, for example, by saying there had been no oral sex. She explained that this was not uncommon for sexual offenders. Lawson further agreed that there are limitations on the treatment program such that she could not monitor what appellant was doing when not in the once-a-week counseling sessions. Also contained in the record from the punishment hearing is much of Lawson's file on appellant's treatment, including progress notes, personal and family histories, and therapist comments and recommendations.

At the conclusion of the punishment hearing, the trial court sentenced appellant to twelve years in prison. Appellant subsequently filed a motion for new trial, arguing that he received ineffective assistance of counsel due to his counsel's inadequate preparation for the punishment hearing. At a hearing on the motion, appellant introduced his own affidavit, as well as a report and testimony from Dr. Jerome Brown and additional testimony from Lawson. The trial court denied the motion for new trial.

In his affidavit, appellant averred that after he hired trial counsel, the latter suggested that appellant enroll in a counseling program. While in the Baylor program, Lawson gave appellant a letter concerning performance of a risk assessment (as requested by CPS). Appellant gave the letter to counsel, and counsel said that they would get such an evaluation if needed. Appellant said that he asked counsel about the assessment on several occasions and "followed [counsel's] directions."

During the hearing on the motion for new trial, Brown testified that he is a clinical psychologist involved in the treatment and analysis of sexual offenders. After sentencing, Brown conducted a risk assessment of appellant, concluding that appellant did not demonstrate certain risk factors such as drug or alcohol abuse, a history of having been molested himself, certain attitudes that support sexual offenses, poor life management, antisocial

characteristics, or significant immaturity or impulsivity. The assessment also revealed that appellant does not have any "special interest" in children. According to Brown, appellant exhibited a great deal of openness about the offense and took responsibility for it. Brown called the offense an "opportunistic family-incest-type event," which he described as having characteristics "very different than the dynamics of the pedophile." Brown concluded that appellant was in the lowest category of offender in regards to likelihood to repeat the offense; approximately one in ten offenders in that category will repeat their offense "in some kind of way." He indicated that treatment could lower the odds even further. Brown called appellant an excellent candidate for probation. He further asserted that the court had been at a "great handicap" in assessing punishment in the absence of a risk assessment. During cross-examination by the prosecutor, Brown acknowledged that he could not guarantee appellant's abstinence from reoffense. He further acknowledged that the assessment he performed did not factor in the extent of the abuse to the particular victim or the number of occurrences involving the victim.

Lawson also testified at the new trial hearing, asserting that in her original testimony she had not been asked about her background in the treatment of sex offenders. She explained that she has been working with such offenders for 20 years and has been director of the Baylor treatment program for seven years. She has testified for sex offenders approximately 40 to 50 times. She further stated that she did not complete any type of formal risk assessment on appellant, although she admitted that she did perform several of the same psychological assessments on appellant as Dr. Brown did. Lawson drew a distinction between a risk assessment, undertaken to determine the likelihood of further abuse, and an assessment for treatment, which seeks to determine a patient's ability to benefit from treatment. She further explained that she would not have been able to perform a risk assessment on appellant because as his treating therapist, it would have been a conflict of interest. Because of this conflict, when CPS asked Lawson to perform a risk assessment, she wrote back to explain why she could not and to recommend other assessment providers, including Brown. She believed that she gave appellant a copy of this letter.

Regarding her contact with appellant's trial counsel, Lawson stated that she first met with counsel on November 1, 2006, the day of the first court setting. Although they spoke briefly that day, counsel did not contact her again until the day of the punishment hearing on November 15. Counsel did not ask how treatment was progressing or for details of Lawson's involvement with appellant. Counsel also did not request, and Lawson did not provide, a copy of Lawson's file, even though it had been subpoenaed by and provided to the prosecutor. Lawson explained that defense lawyers typically contact her before hearings, and although she asked appellant on two occasions to have his attorney call her, counsel never did so. The only phone conversation Lawson recalled with counsel occurred when she called him to verify the time and place for the hearing. Lawson felt it was important for the court to know that appellant was an excellent candidate for treatment and rehabilitation and thus probation. She was frustrated by the lack of preparation for the hearing, as it was not what she was used to from prior proceedings. Regarding her punishment hearing testimony, Lawson said that she did the best she could with the questions asked by both defense counsel and the prosecutor, although the prose-

cutor seemed much better prepared and asked more specific questions. Regarding her treatment notes, which appear in the punishment record, Lawson explained that they provided an overview of appellant's participation in treatment. She provided these to appellant each month with instructions to give them to defense counsel.

Lawson additionally listed a number of factors she sees as demonstrating appellant's favorable treatment prognosis, including that he accepts responsibility, was remorseful, and does not minimize his behavior; that he does not have any mental disorder preventing him from benefitting from treatment; and that he was gainfully employed and enjoyed family support. She again placed appellant in the category of offenders with the lowest likelihood of reoffending. She stated that she normally would discuss factors such as these with defense counsel before testifying, and she felt counsel in the present case did not prepare thoroughly because he did not sufficiently bring out these factors or specifics about Lawson's experience and training.

Lawson further opined that Dr. Brown's assessment would have been beneficial to the court because Brown is very thorough, experienced, and unbiased, and because the results of Brown's assessment again put appellant in the category of offenders least likely to reoffend. She also explained that treatment for a sexual offender often continues through the entirety of their probation.

On cross-examination by the State, Lawson acknowledged that in the punishment hearing, she testified to appellant's treatment progress, likelihood for success, and the factors relevant thereto. She further acknowledged that she had spent a lot more time with appellant than Brown had. She stated that she shared Brown's opinions regarding appellant and had shared those opinions with the court in the pun-

ishment hearing. Appellant's trial counsel did not testify at the motion for new trial hearing.

## Standards of Review

In his first issue, appellant contends that the trial court abused its discretion in overruling his motion for a new trial because he was denied effective assistance of counsel during the punishment hearing. In his second issue, appellant contends he was denied effective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In reviewing an ineffective assistance claim, an appellate court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, [appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* test, in order to demonstrate ineffective assistance of counsel, a defendant must first show that counsel's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness; second, a defendant must affirmatively prove prejudice by showing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* at 813. Appellant bears the burden of proving by a preponderance

of the evidence that counsel was ineffective. *Id.* In the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the alleged failings of trial counsel. *Jackson v. State,* 973 S.W.2d 954, 957 (Tex.Crim. App.1998). This is particularly true when the alleged deficiencies are matters of omission and not of commission revealed in the record. *Id.* A proper record is best developed in a habeas corpus proceeding or in a motion for new trial hearing. *Jensen v. State,* 66 S.W.3d 528, 542 (Tex.App.– Houston [14th Dist.] 2002, pet. ref'd).

▆▆▆ Representation may fall beneath an objective standard of reasonableness if counsel fails to conduct an adequate pretrial investigation. *See Wiggins v. Smith,* 539 U.S. 510, 521–22, 533–34, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Counsel has a duty to make reasonable investigations or reasonable decisions that make such investigations unnecessary. *Id.* at 521–22, 123 S.Ct. 2527. A particular decision not to investigate must be directly assessed for reasonableness under all the relevant circumstances, allotting great deference to counsel's judgments. *Id.* at 521–22, 533– 34, 123 S.Ct. 2527.

### Analysis

Appellant specifically argues that his counsel's investigation and preparation for the punishment hearing was deficient because prior to the hearing, counsel failed to: (1) interview Dr. Lawson at length, (2) review Lawson's entire treatment file, and (3) have a risk assessment conducted. Appellant asserts that counsel could not have made "a legitimate assessment of the evidence" without first discovering the specifics of Lawson's involvement with appellant. He further argues that while suitability for treatment is an important consideration, a more important factor in determining whether and for how long to sentence a

defendant to prison is the risk that the defendant poses to public safety. Appellant maintains that had a risk assessment been presented at the punishment hearing, "a different result might have occurred." According to appellant, a risk assessment would have explained why community supervision was in appellant's best interest and why a twelve year prison sentence was inappropriate.

We begin our analysis by noting that appellant's trial counsel did not testify at the motion for new trial hearing; thus, we do not know exactly what steps counsel took in preparation for the hearing or why he chose not to have a formal risk assessment performed. While the State subpoenaed and received Lawson's entire file, it is left unsaid in the record whether defense counsel might have received a copy of that file from the State. Nonetheless, as the State points out, much of Lawson's file was contained in the presentence investigation report, a copy of which counsel almost certainly received. Furthermore, Lawson testified at the new trial hearing that she gave copies of her treatment notes to appellant with instructions to give them to his counsel. Thus, counsel may (or may not) have concluded that he had enough information regarding Lawson's opinions of appellant's treatment and did not need to speak with her in-depth before the hearing. In such a vacuum of information regarding what counsel knew and did, it is practically impossible to sit in judgment of his actions. *See Jackson,* 973 S.W.2d at 957.

▆▆▆ On the face of the record before us, we cannot say that counsel's investigation and preparation was inadequate. Although, as Lawson suggested in her testimony, the prosecutor may have asked more specific questions than defense counsel in the punishment hearing, when pressed as to what she wished she had

been able to impart during that hearing that was not brought out, Lawson principally said that she was not asked enough about her own qualifications and experience. Lawson, however, testified in the punishment hearing that she is a psychologist and the director of the sexual abuse treatment program at Baylor College of Medicine. The length of her tenure at that position and the specifics of her professional training and experience do not seem so relevant to her testimony regarding appellant that a failure to bring them out rendered trial counsel's representation ineffective. Also in her motion for new trial testimony, Lawson acknowledged that at the punishment hearing, she testified to appellant's treatment progress, likelihood for success, and the factors relevant thereto. It thus appears that while trial counsel did not speak with Lawson at length prior to the punishment hearing, he was able to elicit from Lawson the most important information concerning appellant's treatment.

■ Regarding the failure to obtain a risk assessment prior to the punishment hearing, we again note that we are without the benefit of counsel's explanation for this decision.[1] Without specifically so stating, appellant's arguments suggest that in any case involving sexual assault of a child, defense counsel must obtain a formal risk assessment or be deemed ineffective. Appellant, however, cites no authority supporting this proposition, and we have discovered none. Here, while the trial court did not have the benefit of a formal risk assessment when determining appellant's sentence, the court was privy to Lawson's testimony regarding the risk appellant posed to the community. Lawson's conclusions in this regard are nearly identical to those of Dr. Brown, who subsequently performed a risk assessment on appellant. Furthermore, Lawson has acknowledged that she administered many of the same psychological assessments on appellant as did Dr. Brown. She also agreed that she has spent considerably more time with appellant than has Brown. In light of Lawson's testimony at the punishment hearing, we do not find that the failure to obtain a formal risk assessment dropped counsel's performance below the wide range of what is considered reasonable professional assistance. Thus, appellant has failed to prove by a preponderance of the evidence that his trial counsel was ineffective. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Furthermore, because appellant failed to prove that his counsel was ineffective, the trial court did not err in denying his motion for new trial, which was based solely on the alleged ineffectiveness of counsel.

1. In *Stogiera v. State,* 191 S.W.3d 194 (Tex. App.–San Antonio 2005, no pet.), the defendant was convicted of solicitation with intent to sexually assault a child. On appeal, he complained both that his trial counsel rendered ineffective assistance of counsel and that the trial court erred in failing to conduct a hearing on his motion for new trial. *Id.* at 195. The defendant specifically alleged that counsel was ineffective for, among other things, failing to obtain a risk assessment of future harm to the community. *Id.* at 198–99. Indeed, despite the fact the defendant was in counseling at the time of the punishment hearing, counsel did not present any expert evidence regarding his future dangerousness, relying instead on friends of the family for such testimony. *Id.* at 199–200. The court of appeals declined to hold that such failure was per se ineffective assistance of counsel because the record before it contained no explanation as to why trial counsel did not pursue any psychological analysis. *Id.* at 199–200. Instead, the court reversed and remanded to the trial court for a motion for new trial hearing. *Id.* at 200–01. On appeal after remand, the appeals court held that the defendant's right to effective assistance of counsel had not been violated. *Stogiera v. State,* No. 04–04–00675–CR, 2006 WL 3419778, at *2–3 (Tex.App.–San Antonio 2006, no pet.).

Accordingly, we overrule appellant's two issues.

We affirm the trial court's judgment.