**Opinion filed March 24, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00064-CR
_____

### PRESLEY KEVIN BIGGERS, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-35,133**

### M E M O R A N D U M   O P I N I O N

The jury convicted Presley Kevin Biggers of sexual assault. The trial court found an enhancement allegation to be true and assessed appellant's punishment at confinement for life. In two points of error, appellant contends that he received ineffective assistance of counsel at trial. We affirm.

#### *Background Facts*

The indictment alleged that, on or about June 1, 2007, appellant intentionally and knowingly penetrated the sexual organ of PLS without her consent. The indictment contained an

enhancement paragraph alleging that appellant had a previous conviction for a second degree felony offense of indecency with a child by contact.

The record shows that, during the afternoon of May 31, 2007, PLS and Jessica Garcia went to see Afton Branch and Brittany Michelle Hoover at Afton and Brittany's house in Midland. While there, the four women smoked marihuana. Later, they went to the house where Afton's mother, Lorrell Branch, lived with appellant in Odessa. Appellant and Lorrell showed up at the house soon after the women arrived, and everyone went inside and ate dinner. Lorrell poured Canadian Mist whiskey drinks for everyone. At one point, Jessica and PLS pulled up their shirts and exposed their breasts to pose for a picture, and a picture was taken of them. The picture was introduced into evidence. After PLS drank a few drinks, she passed out at the kitchen table.

Afton and Jessica left to go to the store. Brittany testified that, while Afton and Jessica were gone, appellant began making sexual comments, propositioned her for sex, asked her whether she would penetrate him with a dildo, exposed his penis, and stuck his penis in PLS's face as she was passed out at the table. Lorrell testified that appellant exposed his penis, tried to stick his penis in Brittany's face, and stuck his penis in PLS's face as PLS was passed out. Brittany did not respond to appellant's propositions. Lorrell was upset by appellant's behavior and struck him with a belt. Afton and Jessica returned from the store, and then Afton and Brittany wanted to go home. Jessica attempted to wake up PLS, but PLS did not respond to Jessica's attempts. Jessica took Afton and Brittany to their house in Midland.

Lorrell helped PLS move from the kitchen table to a bed in the bedroom. PLS urinated on herself, and Lorrell helped PLS change into some jeans. Jessica returned to Lorrell and appellant's house. Jessica left the house again, obtained methamphetamine, and then returned to the house. PLS was passed out in the bed, wearing only a shirt. Jessica testified that she found appellant in the bedroom "kissing on [PLS's] stomach and on her breasts." Jessica told appellant to stop, and she and appellant went into the living room.

Appellant took a number of racy pictures of Jessica and Lorrell together while they were wearing lingerie. There was testimony about these pictures, but they were not introduced into evidence. Lorrell took a picture of appellant and Jessica. This picture was introduced into evidence. It showed Jessica on top of appellant on a couch. Jessica was wearing lingerie.

2

Appellant was wearing jeans and was not wearing a shirt. Jessica said that PLS was totally comatose when these pictures were taken.

Jessica, Lorrell, and appellant left the house to get some money from an ATM. When they arrived at the ATM, they realized that they did not have an ATM card. They returned to the house, and Lorrell sent appellant inside to get the card. After a short period of time, Lorrell sent Jessica inside to see what was taking appellant so long to find the card. Jessica testified that she found appellant in the bedroom with PLS. She said that PLS was unconscious and facedown on the bed. Jessica said that she saw appellant penetrating PLS with his penis. Jessica pulled appellant off PLS. Jessica testified that appellant's penis was erect. Jessica and appellant started to argue. Lorrell entered the room and joined in the argument. Appellant told Lorrell and Jessica to "get the 'f' out." Lorrell testified that appellant tried to "jerk [her] around" and that Jessica "pulled a knife" in an effort to defend her. Appellant took the knife from Jessica and stuck it in the wall. Lorrell and Jessica left the house, and Jessica called 911.

The next morning, Lorrell returned to the house by cab ride. Appellant had thrown Lorrell's belongings into the front yard. Lorrell went inside the house and attacked appellant and PLS. At about 7:00 a.m., deputies from the Ector County Sheriff's Office arrived at the house. Lorrell was placed under arrest for assault, possession of marihuana that was found in her purse, and theft of service for failing to pay for the cab ride. The officers found PLS unconscious on the floor of the house. She was clothed only in a shirt. She was transported to Medical Center Hospital in Odessa. PLS regained consciousness at the hospital. She could not remember the events from the previous night. A blood alcohol test at the hospital showed that PLS had a blood alcohol content level of .309. At about 8:00 p.m., a sexual assault examination was performed on PLS at Midland Memorial Hospital. The examination showed the presence of an injury consistent with recent sexual intercourse.

The State presented DNA evidence. Naomi McDonald, a forensic scientist with the Texas Department of Public Safety Crime Laboratory in Lubbock, performed a standard sexual assault analysis of the items that had been submitted for DNA analysis. McDonald testified that her analysis of the items did not reveal the presence of semen or indications of semen. McDonald also testified that appellant could not be excluded as a contributor to a DNA profile that was found on a left breast swab taken from PLS. McDonald said that this profile could have consisted of dried epithelial cells or saliva.

3

After the State rested, the trial court admonished appellant of his rights. Based on the advice of his trial counsel, appellant elected not to testify and not to call any witnesses. The jury convicted appellant, and the case proceeded to the punishment phase. Appellant pleaded "not true" to the enhancement allegation. The State introduced the pen packet relating to appellant's conviction for indecency with a child by contact, and the trial court found the enhancement allegation to be true. Based on the earlier conviction, the trial court sentenced appellant as a repeat sex offender to a mandatory life sentence. *See* TEX. PENAL CODE ANN. § 12.42(c)(2)(B)(ii) (Vernon Supp. 2010).

After the trial, appellant retained new counsel to represent him. Appellant raised ineffective assistance of counsel claims against his trial counsel in a motion for new trial. The trial court conducted a hearing on the motion. The testimony at the hearing covered parts of three days. Appellant called a number of witnesses, including his trial counsel, to testify at the hearing. Appellant also testified at the hearing. The trial court denied appellant's motion.

## Issues Presented

Appellant presents two points of error for review. In his points, he contends that he received ineffective assistance of counsel at trial in violation of the Sixth Amendment of the United States Constitution; Article I, sections 10 and 15 of the Texas Constitution; and Article 1.05 of the Texas Code of Criminal Procedure. *See* U.S. CONST. amend. 6; TEX. CONST. art. I, §§ 10, 15; TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005).

## Standard of Review

The standard for ineffective assistance of counsel is the same under the United States and Texas Constitutions. *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986); *Deaver v. State*, 314 S.W.3d 481, 483 (Tex. App.—Fort Worth 2010, no pet.). To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). We look to the totality of the representation and the particular circumstances of each in evaluating the effectiveness of counsel. *Thompson*, 9 S.W.3d

at 813. We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and an appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63; *Stafford v. State*, 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991). To overcome the presumption of reasonable professional assistance, an allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813.

When, as here, an appellant raises the issue of ineffective assistance of counsel in a motion for new trial, we review the trial court's denial of the motion for an abuse of discretion. *Rodriguez v. State*, 329 S.W.3d 74, 81 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *My Thi Tieu v. State*, 299 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). We review the evidence in the light most favorable to the trial court's ruling, and we will reverse only if no reasonable view of the record could support the trial court's ruling. *Rodriguez*, 329 S.W.3d at 81.

*Analysis*

Appellant argues that his trial counsel rendered ineffective assistance of counsel by failing to conduct any pretrial investigation or preparation. Appellant contends that the lack of investigation and preparation resulted in other deficiencies by his trial counsel, including the failure to effectively or competently cross-examine the State's witnesses, the failure to call witnesses, and the failure to present exculpatory evidence and other evidence that would have been favorable to appellant.

*A. Pretrial Investigation and Preparation.*

A trial counsel's representation may fall beneath an objective standard of reasonableness if he fails to conduct an adequate pretrial investigation. *Salinas v. State*, 274 S.W.3d 256, 261 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). Counsel has a duty to make reasonable investigations or reasonable decisions that make such investigations unnecessary. *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006); *Salinas*, 274 S.W.3d at 261. A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Ex parte Martinez*, 195 S.W.3d at 721; *Salinas*, 274 S.W.3d at 261.

5

Appellant contends that his trial counsel engaged in a "complete lack of investigation and preparation." This contention is not supported by the record. Appellant's trial counsel testified about the scope of his investigation at the hearing on appellant's motion for new trial. He testified that the district attorney's office maintained an open file policy and that, therefore, he had full access to the district attorney's file. He said that he thoroughly reviewed the documents in that file. Trial counsel also testified that, as soon as appellant retained him, he obtained a copy of appellant's file from appellant's prior attorney and that he reviewed the documents in that file. Trial counsel also reviewed some photographs that appellant provided to him.

Trial counsel testified that he interviewed appellant, Lorrell, and Donna Griffith, who was appellant's sister. Trial counsel explained why he did not interview others. He said that he attempted to interview PLS but that she would not speak to him. He decided not to attempt to interview Afton because he learned that Afton claimed that appellant had raped her when she was twelve years old. The district attorney's office informed trial counsel that Afton might file sexual assault charges against appellant. Trial counsel believed that contacting Afton on appellant's behalf could inflame her sexual assault allegations. Trial counsel elected not to interview Brittany because she had already made conflicting statements. Based on those conflicting statements, trial counsel believed that he could adequately impeach Brittany during cross-examination. Trial counsel said that, before trial, he learned that several of the witnesses had criminal histories and that he used this information to impeach the witnesses at trial. He said that the prosecution disclosed the criminal histories to him.

Trial counsel talked with appellant about his defense. Trial counsel said that appellant had changed his story as to what happened on the night in question. Appellant told trial counsel three versions of the story: (1) that appellant, Lorrell, and PLS engaged in consensual sex with each other; (2) that he engaged in consensual sex with PLS; and (3) that he did not engage in sex with PLS. Lorrell told trial counsel that she did not have sex with PLS. Appellant wanted the jury to believe that a "sex party" occurred on the night in question. However, the women who were present at the house contradicted this claim.

Contrary to appellant's assertion that his trial counsel failed to conduct any investigation before developing a trial strategy, the record demonstrates that trial counsel conducted an adequate investigation. During his testimony, trial counsel explained the actions that he took, and he also explained the reasons that he did not take other actions. Based on his investigation,

he developed a trial strategy based on theories that no sex occurred between appellant and PLS and that the State could not prove its allegations beyond a reasonable doubt. Appellant has not shown that trial counsel rendered ineffective assistance of counsel in his investigation of the facts of the case.

*B. Cross-Examination of the State's Witnesses.*

Appellant contends that trial counsel's failure to conduct an adequate investigation resulted in "completely unprepared cross-examination of the State's witnesses, without specific knowledge of the facts/history of each witness, or documents/evidence relied upon by the State's witnesses." Again, appellant's contention is not supported by the record.

Appellant asserts that trial counsel failed to effectively or competently cross-examine Jessica and Lorrell. Appellant contends that trial counsel failed to elicit or emphasize Jessica's criminal history and drug use for the purpose of impeaching her. However, the record demonstrates that trial counsel extensively cross-examined Jessica about her criminal history and drug use. During cross-examination, Jessica testified that she had a prior aggravated assault conviction. Trial counsel cross-examined her about her conduct on the date of the alleged sexual assault. Jessica testified that, on that date, she drank whiskey, smoked marihuana, purchased and smoked methamphetamine, and posed for the racy pictures with Lorrell. Jessica said that, during that time period, she regularly smoked methamphetamine. She also said that she had used cocaine in the past. She characterized herself as "[a] recovering drug addict" who had used several illicit and illegal drugs. Jessica also testified that she had a mental illness, which she characterized as follows: "Bipolar, Post Traumatic Stress Disorder, Schizoaffective and a personality disorder." She said that she took prescription medications for her mental illness. Also during cross-examination, Jessica admitted that, at one point, she told appellant she was going to change her story because she hated PLS.

Similarly, trial counsel cross-examined Lorrell about her criminal history and drug use. Lorrell said that she had a 2002 federal conviction for possession of a firearm while on cocaine. She said that she had served time in prison for that conviction. Lorrell admitted that she was a drug addict. Lorrell was on parole on the federal conviction when the alleged sexual assault in this case occurred. Lorrell testified that she drank whiskey and smoked marihuana at her house on May 31, 2007. She said that she and Jessica were in some of the photographs that were taken

7

that night. Lorrell also testified that, on the morning of June 1, 2007, she was arrested for assault. She said that the assault charge led to her federal parole being revoked.

Additionally, trial counsel's cross-examination of the State's witnesses revealed inconsistencies in their testimony. Trial counsel's cross-examination of the witnesses advanced his trial strategy of establishing that the State could not prove beyond a reasonable doubt that appellant sexually assaulted PLS. The record supports the conclusion that trial counsel adequately cross-examined the witnesses. In essence, appellant contends that trial counsel should have impeached the State's witnesses more than he did. However, the extent to which an attorney cross-examines witnesses falls within the parameters of trial strategy. *Miniel v. State*, 831 S.W.2d 310, 324 (Tex. Crim. App. 1992); *Hollis v. State*, 219 S.W.3d 446, 470 (Tex. App.—Austin 2007, no pet.); *Bernal v. State*, 930 S.W.2d 636, 641 (Tex. App.—Corpus Christi 1996, pet. ref'd). Appellant has not shown that trial counsel's cross-examination of the State's witnesses was deficient.

*C. Failing to Call Witnesses and to Present Exculpatory and Favorable Evidence.*

Appellant contends that trial counsel rendered ineffective assistance of counsel by failing to call Afton, Griffith (appellant's sister), Jerrell Brown (the taxi driver), and appellant as witnesses. The decision whether to present witnesses is largely a matter of trial strategy. *Rodd v. State*, 886 S.W.2d 381, 384 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Trial counsel testified that he did not believe the State met its burden of proof during its case-in-chief. He thought that it would be "dangerous" for appellant to call witnesses because that could "open another door" for the State to prove its case. Therefore, trial counsel concluded that appellant should not call any witnesses. Trial counsel said that he advised appellant, and appellant agreed, that appellant should not present any witnesses. When the trial court admonished appellant of his rights, appellant testified that he did not wish to call any witnesses. The record demonstrates that trial counsel's advice to appellant not to call witnesses was based on the trial strategy that the State had not met its burden of proof.

Trial counsel also testified as to other plausible reasons that led to his decision to advise appellant not to call witnesses or to testify on his own behalf. Trial counsel believed that calling Afton as a witness would open the door for admission of evidence of (1) Afton's claim that appellant sexually assaulted her when she was twelve years old and (2) appellant's prior conviction for indecency with a child by contact. Trial counsel thought that admission of the

prior conviction would be "devastating" to appellant's case. Also, appellant cannot establish that trial counsel was ineffective for failing to call Afton as a witness because appellant has not shown that Afton was available to testify and that her testimony would have benefitted the defense. *Perez*, 310 S.W.3d at 894.

Similarly, trial counsel believed that appellant's prior conviction would be admissible and introduced into evidence if appellant testified. Trial counsel also believed that other damaging evidence about appellant's past sexual acts and conduct would be admitted. Additionally, appellant had told trial counsel three versions as to what happened on the night in question. Because two of those versions conflicted with the theory that no sexual intercourse occurred, trial counsel believed that putting appellant on the stand would pose a risk to appellant's defense.

Appellant contends that trial counsel should have called Jerrell Brown, the taxi driver, as a witness. Brown is the taxi driver who drove Lorrell to the house on June 1, 2007. According to appellant, he told Brown to call 911 for PLS's safety because Lorrell was battering PLS. Trial counsel did not believe that evidence of this fact was relevant to trial strategy. Additionally, trial counsel did not want to call Brown as a witness because he wanted to avoid presenting evidence relating to the altercation between Lorrell and PLS. Lorrell had told trial counsel that she "beat [PLS] up because [appellant] was in there f-----g her." Therefore, trial counsel believed that evidence relating to the altercation would tend to prove that sexual intercourse between appellant and PLS occurred. The police report indicated that Brown had knowledge of the altercation between Lorrell and PLS. The report provided as follows: that, when Brown dropped Lorrell off at the house, she asked him not to leave because she might need him to take her back to Midland; that Lorrell went inside the residence; that, while Brown waited at his cab, he heard an altercation taking place inside the house; that, later, Brown saw Lorrell come outside the house with a bloody face; and that Brown also saw appellant come outside the house. By not calling Brown as a witness, trial counsel promoted his reasonable trial strategy of avoiding evidence relating to the altercation between Lorrell and PLS. Also, appellant has not shown that Brown was available to testify and that his testimony would have benefitted the defense. *Perez*, 310 S.W.3d at 894.

Appellant also contends that trial counsel should have called his sister, Griffith, as a witness. Griffith testified at the hearing on appellant's motion for new trial. Appellant asserts in his brief that Griffith would have testified at trial as follows: (1) she had a telephone

conversation with appellant in the early morning hours of June 1, 2007, and during that phone call, she heard "the voice of a coherent and nonthreatened [PLS]" in the background; (2) Afton made an exculpatory written statement, and trial counsel failed to secure it for use as evidence at trial; and (3) trial counsel failed to maintain and forensically test for use as evidence "sex toys" that Lorrell, Jessica, and PLS used on each other at the time of the alleged incident. Appellant has not shown that Griffith's testimony on these matters would have been admissible at trial. For example, much of Griffith's proposed testimony appears to be inadmissible hearsay. Trial counsel cannot be ineffective for failing to offer inadmissible evidence. *Coleman v. State*, 188 S.W.3d 708, 724-25 (Tex. App.—Tyler 2005, pet. ref'd).

*D. Conclusion.*

Appellant has not shown that his trial counsel rendered ineffective assistance of counsel. Nor has he shown that there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's alleged deficient performance. The trial court did not abuse its discretion by denying appellant's motion for new trial. Appellant's points of error are overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


March 24, 2011

Do not publish. *See* Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

10