Opinion filed March 24,
2011

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00064-CR 

                                                    __________

 

                            PRESLEY
KEVIN BIGGERS, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 244th District Court

 

                                                             Ector
County, Texas

 

                                                   Trial
Court Cause No. C-35,133 

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The
jury convicted Presley Kevin Biggers of sexual assault.  The trial court found
an enhancement allegation to be true and assessed appellant’s punishment at
confinement for life.  In two points of error, appellant contends that he
received ineffective assistance of counsel at trial.  We affirm.

Background
Facts

            The
indictment alleged that, on or about June 1, 2007, appellant intentionally and
knowingly penetrated the sexual organ of PLS without her consent.  The
indictment contained an enhancement paragraph alleging that appellant had a
previous conviction for a second degree felony offense of indecency with a
child by contact.

            The
record shows that, during the afternoon of May 31, 2007, PLS and Jessica Garcia
went to see Afton Branch and Brittany Michelle Hoover at Afton and Brittany’s
house in Midland.  While there, the four women smoked marihuana.  Later, they
went to the house where Afton’s mother, Lorrell Branch, lived with appellant in
Odessa.  Appellant and Lorrell showed up at the house soon after the women arrived,
and everyone went inside and ate dinner.  Lorrell poured Canadian Mist whiskey
drinks for everyone.  At one point, Jessica and PLS pulled up their shirts and
exposed their breasts to pose for a picture, and a picture was taken of them.  The
picture was introduced into evidence.  After PLS drank a few drinks, she passed
out at the kitchen table.

            Afton
and Jessica left to go to the store.  Brittany testified that, while Afton and
Jessica were gone, appellant began making sexual comments, propositioned her
for sex, asked her whether she would penetrate him with a dildo, exposed his
penis, and stuck his penis in PLS’s face as she was passed out at the table.  Lorrell
testified that appellant exposed his penis, tried to stick his penis in
Brittany’s face, and stuck his penis in PLS’s face as PLS was passed out.   Brittany
did not respond to appellant’s propositions.  Lorrell was upset by appellant’s
behavior and struck him with a belt.  Afton and Jessica returned from the
store, and then Afton and Brittany wanted to go home.  Jessica attempted to
wake up PLS, but PLS did not respond to Jessica’s attempts.  Jessica took Afton
and Brittany to their house in Midland.

            Lorrell
helped PLS move from the kitchen table to a bed in the bedroom.  PLS urinated
on herself, and Lorrell helped PLS change into some jeans.  Jessica returned to
Lorrell and appellant’s house.  Jessica left the house again, obtained
methamphetamine, and then returned to the house.  PLS was passed out in the bed,
wearing only a shirt.  Jessica testified that she found appellant in the
bedroom “kissing on [PLS’s] stomach and on her breasts.”  Jessica told
appellant to stop, and she and appellant went into the living room.

            Appellant
took a number of racy pictures of Jessica and Lorrell together while they were wearing
lingerie.  There was testimony about these pictures, but they were not
introduced into evidence.  Lorrell took a picture of appellant and Jessica.  This
picture was introduced into evidence.  It showed Jessica on top of appellant on
a couch.  Jessica was wearing lingerie.  Appellant was wearing jeans and was
not wearing a shirt.  Jessica said that PLS was totally comatose when these
pictures were taken.

            Jessica,
Lorrell, and appellant left the house to get some money from an ATM.  When they
arrived at the ATM, they realized that they did not have an ATM card.  They
returned to the house, and Lorrell sent appellant inside to get the card.  After
a short period of time, Lorrell sent Jessica inside to see what was taking
appellant so long to find the card.  Jessica testified that she found appellant
in the bedroom with PLS.  She said that PLS was unconscious and facedown on the
bed.  Jessica said that she saw appellant penetrating PLS with his penis.  Jessica
pulled appellant off PLS.  Jessica testified that appellant’s penis was erect.  Jessica
and appellant started to argue.  Lorrell entered the room and joined in the
argument.  Appellant told Lorrell and Jessica to “get the ‘f’ out.”  Lorrell
testified that appellant tried to “jerk [her] around” and that Jessica “pulled
a knife” in an effort to defend her.  Appellant took the knife from Jessica and
stuck it in the wall.  Lorrell and Jessica left the house, and Jessica called
911.

            The
next morning, Lorrell returned to the house by cab ride.  Appellant had thrown
Lorrell’s belongings into the front yard.  Lorrell went inside the house and attacked
appellant and PLS.  At about 7:00 a.m., deputies from the Ector County
Sheriff’s Office arrived at the house.  Lorrell was placed under arrest for
assault, possession of marihuana that was found in her purse, and theft of
service for failing to pay for the cab ride.  The officers found PLS
unconscious on the floor of the house.  She was clothed only in a shirt.  She
was transported to Medical Center Hospital in Odessa.  PLS regained
consciousness at the hospital.  She could not remember the events from the
previous night.  A blood alcohol test at the hospital showed that PLS had a
blood alcohol content level of .309.  At about 8:00 p.m., a sexual assault
examination was performed on PLS at Midland Memorial Hospital.  The examination
showed the presence of an injury consistent with recent sexual intercourse.

            The
State presented DNA evidence.  Naomi McDonald, a forensic scientist with the
Texas Department of Public Safety Crime Laboratory in Lubbock, performed a
standard sexual assault analysis of the items that had been submitted for DNA
analysis.  McDonald testified that her analysis of the items did not reveal the
presence of semen or indications of semen.  McDonald also testified that
appellant could not be excluded as a contributor to a DNA profile that was found
on a left breast swab taken from PLS.  McDonald said that this profile could
have consisted of dried epithelial cells or saliva.

            After
the State rested, the trial court admonished appellant of his rights.  Based on
the advice of his trial counsel, appellant elected not to testify and not to
call any witnesses.  The jury convicted appellant, and the case proceeded to
the punishment phase.  Appellant pleaded “not true” to the enhancement
allegation.  The State introduced the pen packet relating to appellant’s conviction
for indecency with a child by contact, and the trial court found the enhancement
allegation to be true.  Based on the earlier conviction, the trial court
sentenced appellant as a repeat sex offender to a mandatory life sentence.  See
Tex. Penal Code Ann. § 12.42(c)(2)(B)(ii)
(Vernon Supp. 2010).

            After
the trial, appellant retained new counsel to represent him.  Appellant raised
ineffective assistance of counsel claims against his trial counsel in a motion
for new trial.  The trial court conducted a hearing on the motion.  The
testimony at the hearing covered parts of three days.  Appellant called a
number of witnesses, including his trial counsel, to testify at the hearing. 
Appellant also testified at the hearing.  The trial court denied appellant’s
motion.

Issues
Presented

            Appellant
presents two points of error for review.  In his points, he contends that he
received ineffective assistance of counsel at trial in violation of the Sixth
Amendment of the United States Constitution; Article I, sections 10 and 15 of
the Texas Constitution; and Article 1.05 of the Texas Code of Criminal
Procedure.  See U.S. Const.
amend. 6; Tex. Const. art. I, §§
10, 15; Tex. Code Crim. Proc. Ann.
art. 1.05 (Vernon 2005).

Standard
of Review

            The
standard for ineffective assistance of counsel is the same under the United
States and Texas Constitutions.  Hernandez v. State, 726 S.W.2d 53,
56-57 (Tex. Crim. App. 1986); Deaver v. State, 314 S.W.3d 481, 483
(Tex. App.—Fort Worth 2010, no pet.).  To establish ineffective assistance of
counsel, an appellant must show by a preponderance of the evidence that his
counsel’s representation fell below the standard of prevailing professional
norms and that there is a reasonable probability that, but for counsel’s
deficiency, the result of the proceeding would have been different.  Strickland
v. Washington, 466 U.S. 668, 687 (1984); Perez v. State, 310 S.W.3d
890, 893 (Tex. Crim. App. 2010); Salinas v. State, 163 S.W.3d 734, 740
(Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63 (Tex.
Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999).  We look to the totality of the representation and the particular
circumstances of each in evaluating the effectiveness of counsel.  Thompson,
9 S.W.3d at 813.  We must indulge a strong presumption that counsel’s conduct
fell within the wide range of reasonable professional assistance, and an
appellant must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy.  Salinas,
163 S.W.3d at 740; Mallett, 65 S.W.3d at 63; Stafford v. State,
813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991).  To overcome the presumption of
reasonable professional assistance, an allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.  Thompson, 9 S.W.3d at 813.  

            When,
as here, an appellant raises the issue of ineffective assistance of counsel in
a motion for new trial, we review the trial court’s denial of the motion for an
abuse of discretion.  Rodriguez v. State, 329 S.W.3d 74, 81 (Tex. App.—Houston
[14th Dist.] 2010, no pet.); My Thi Tieu v. State, 299 S.W.3d 216, 223
(Tex. App.—Houston [14th Dist.] 2009, pet. ref’d).  We review the evidence in
the light most favorable to the trial court’s ruling, and we will reverse only
if no reasonable view of the record could support the trial court’s ruling.  Rodriguez,
329 S.W.3d at 81.

Analysis

            Appellant
argues that his trial counsel rendered ineffective assistance of counsel by
failing to conduct any pretrial investigation or preparation.  Appellant
contends that the lack of investigation and preparation resulted in other deficiencies
by his trial counsel, including the failure to effectively or competently
cross-examine the State’s witnesses, the failure to call witnesses, and the
failure to present exculpatory evidence and other evidence that would have been
favorable to appellant.

            A.
Pretrial Investigation and Preparation.

            A trial
counsel’s representation may fall beneath an objective standard of
reasonableness if he fails to conduct an adequate pretrial investigation.  Salinas
v. State, 274 S.W.3d 256, 261 (Tex. App.—Houston [14th Dist.] 2008, pet.
ref’d).  Counsel has a duty to make reasonable investigations or reasonable
decisions that make such investigations unnecessary.  Ex parte Martinez,
195 S.W.3d 713, 721 (Tex. Crim. App. 2006); Salinas, 274 S.W.3d at 261. 
A particular decision not to investigate must be directly assessed for
reasonableness in all the circumstances, applying a heavy measure of deference
to counsel’s judgments.  Ex parte Martinez, 195 S.W.3d at 721; Salinas,
274 S.W.3d at 261.

            Appellant
contends that his trial counsel engaged in a “complete lack of
investigation and preparation.”  This contention is not supported by the
record.  Appellant’s trial counsel testified about the scope of his
investigation at the hearing on appellant’s motion for new trial.  He testified
that the district attorney’s office maintained an open file policy and that,
therefore, he had full access to the district attorney’s file.  He said that he
thoroughly reviewed the documents in that file.  Trial counsel also testified
that, as soon as appellant retained him, he obtained a copy of appellant’s file
from appellant’s prior attorney and that he reviewed the documents in that
file. Trial counsel also reviewed some photographs that appellant provided to
him.

            Trial
counsel testified that he interviewed appellant, Lorrell, and Donna Griffith,
who was appellant’s sister.  Trial counsel explained why he did not interview
others.  He said that he attempted to interview PLS but that she would not
speak to him.  He decided not to attempt to interview Afton because he learned
that Afton claimed that appellant had raped her when she was twelve years old.  The
district attorney’s office informed trial counsel that Afton might file sexual
assault charges against appellant.  Trial counsel believed that contacting Afton
on appellant’s behalf could inflame her sexual assault allegations.  Trial
counsel elected not to interview Brittany because she had already made
conflicting statements.  Based on those conflicting statements, trial counsel
believed that he could adequately impeach Brittany during cross-examination. 
Trial counsel said that, before trial, he learned that several of the witnesses
had criminal histories and that he used this information to impeach the
witnesses at trial.  He said that the prosecution disclosed the criminal
histories to him.

            Trial
counsel talked with appellant about his defense.  Trial counsel said that
appellant had changed his story as to what happened on the night in question.  Appellant
told trial counsel three versions of the story:  (1) that appellant, Lorrell,
and PLS engaged in consensual sex with each other; (2) that he engaged in
consensual sex with PLS; and (3) that he did not engage in sex with PLS.  Lorrell
told trial counsel that she did not have sex with PLS.  Appellant wanted the
jury to believe that a “sex party” occurred on the night in question.  However,
the women who were present at the house contradicted this claim.

            Contrary
to appellant’s assertion that his trial counsel failed to conduct any
investigation before developing a trial strategy, the record demonstrates that
trial counsel conducted an adequate investigation.  During his testimony, trial
counsel explained the actions that he took, and he also explained the reasons
that he did not take other actions.  Based on his investigation, he developed a
trial strategy based on theories that no sex occurred between appellant and PLS
and that the State could not prove its allegations beyond a reasonable doubt.  Appellant
has not shown that trial counsel rendered ineffective assistance of counsel in
his investigation of the facts of the case.

B.
Cross-Examination of the State’s Witnesses.

            Appellant
contends that trial counsel’s failure to conduct an adequate investigation
resulted in “completely unprepared cross-examination of the State’s witnesses,
without specific knowledge of the facts/history of each witness, or
documents/evidence relied upon by the State’s witnesses.”  Again, appellant’s
contention is not supported by the record.

Appellant
asserts that trial counsel failed to effectively or competently cross-examine
Jessica and Lorrell.  Appellant contends that trial counsel failed to elicit or
emphasize Jessica’s criminal history and drug use for the purpose of impeaching
her.  However, the record demonstrates that trial counsel extensively
cross-examined Jessica about her criminal history and drug use.  During
cross-examination, Jessica testified that she had a prior aggravated assault
conviction.  Trial counsel cross-examined her about her conduct on the date of
the alleged sexual assault.  Jessica testified that, on that date, she drank
whiskey, smoked marihuana, purchased and smoked methamphetamine, and posed for
the racy pictures with Lorrell.  Jessica said that, during that time period,
she regularly smoked methamphetamine.  She also said that she had used cocaine
in the past.  She characterized herself as “[a] recovering drug addict” who had
used several illicit and illegal drugs.  Jessica also testified that she had a
mental illness, which she characterized as follows: “Bipolar, Post Traumatic
Stress Disorder, Schizoaffective and a personality disorder.”  She said that
she took prescription medications for her mental illness. Also during
cross-examination, Jessica admitted that, at one point, she told appellant she
was going to change her story because she hated PLS.

            Similarly,
trial counsel cross-examined Lorrell about her criminal history and drug use.  Lorrell
said that she had a 2002 federal conviction for possession of a firearm while
on cocaine.  She said that she had served time in prison for that conviction.  Lorrell
admitted that she was a drug addict.  Lorrell was on parole on the federal
conviction when the alleged sexual assault in this case occurred.  Lorrell
testified that she drank whiskey and smoked marihuana at her house on May 31,
2007.  She said that she and Jessica were in some of the photographs that were
taken that night.  Lorrell also testified that, on the morning of June 1, 2007,
she was arrested for assault.  She said that the assault charge led to her
federal parole being revoked.

Additionally,
trial counsel’s cross-examination of the State’s witnesses revealed
inconsistencies in their testimony.  Trial counsel’s cross-examination of the
witnesses advanced his trial strategy of establishing that the State could not
prove beyond a reasonable doubt that appellant sexually assaulted PLS.  The
record supports the conclusion that trial counsel adequately cross-examined the
witnesses.  In essence, appellant contends that trial counsel should have impeached
the State’s witnesses more than he did.  However, the extent to which an
attorney cross-examines witnesses falls within the parameters of trial
strategy.  Miniel v. State, 831 S.W.2d 310, 324 (Tex. Crim. App. 1992); Hollis
v. State, 219 S.W.3d 446, 470 (Tex. App.—Austin 2007, no pet.); Bernal
v. State, 930 S.W.2d 636, 641 (Tex. App.—Corpus Christi 1996, pet. ref’d). 
Appellant has not shown that trial counsel’s cross-examination of the State’s
witnesses was deficient.

C.
Failing to Call Witnesses and to Present Exculpatory and Favorable Evidence.

            Appellant
contends that trial counsel rendered ineffective assistance of counsel by
failing to call Afton, Griffith (appellant’s sister), Jerrell Brown (the taxi
driver), and appellant as witnesses.  The decision whether to present witnesses
is largely a matter of trial strategy.  Rodd v. State, 886 S.W.2d
381, 384 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).  Trial counsel
testified that he did not believe the State met its burden of proof during its case-in-chief.
 He thought that it would be “dangerous” for appellant to call witnesses
because that could “open another door” for the State to prove its case.  Therefore,
trial counsel concluded that appellant should not call any witnesses.  Trial
counsel said that he advised appellant, and appellant agreed, that appellant
should not present any witnesses.  When the trial court admonished appellant of
his rights, appellant testified that he did not wish to call any witnesses. 
The record demonstrates that trial counsel’s advice to appellant not to call
witnesses was based on the trial strategy that the State had not met its burden
of proof.  

            Trial
counsel also testified as to other plausible reasons that led to his decision
to advise appellant not to call witnesses or to testify on his own behalf.  Trial
counsel believed that calling Afton as a witness would open the door for
admission of evidence of (1) Afton’s claim that appellant sexually assaulted
her when she was twelve years old and (2) appellant’s prior conviction for
indecency with a child by contact.  Trial counsel thought that admission of the
prior conviction would be “devastating” to appellant’s case.  Also, appellant cannot
establish that trial counsel was ineffective for failing to call Afton as a
witness because appellant has not shown that Afton was available to testify and
that her testimony would have benefitted the defense.  Perez, 310 S.W.3d
at 894.

Similarly,
trial counsel believed that appellant’s prior conviction would be admissible and
introduced into evidence if appellant testified.  Trial counsel also believed
that other damaging evidence about appellant’s past sexual acts and conduct
would be admitted.  Additionally, appellant had told trial counsel three
versions as to what happened on the night in question.  Because two of those versions
conflicted with the theory that no sexual intercourse occurred, trial counsel
believed that putting appellant on the stand would pose a risk to appellant’s
defense.

Appellant
contends that trial counsel should have called Jerrell Brown, the taxi driver,
as a witness.  Brown is the taxi driver who drove Lorrell to the house on June
1, 2007.  According to appellant, he told Brown to call 911 for PLS’s safety
because Lorrell was battering PLS.  Trial counsel did not believe that evidence
of this fact was relevant to trial strategy.  Additionally, trial counsel did
not want to call Brown as a witness because he wanted to avoid presenting
evidence relating to the altercation between Lorrell and PLS.  Lorrell had told
trial counsel that she “beat [PLS] up because [appellant] was in there f-----g
her.”  Therefore, trial counsel believed that evidence relating to the
altercation would tend to prove that sexual intercourse between appellant and
PLS occurred.  The police report indicated that Brown had knowledge of the
altercation between Lorrell and PLS.  The report provided as follows:  that, when
Brown dropped Lorrell off at the house, she asked him not to leave because she
might need him to take her back to Midland; that Lorrell went inside the
residence; that, while Brown waited at his cab, he heard an altercation taking
place inside the house; that, later, Brown saw Lorrell come outside the house
with a bloody face; and that Brown also saw appellant come outside the house.  By
not calling Brown as a witness, trial counsel promoted his reasonable trial
strategy of avoiding evidence relating to the altercation between Lorrell and
PLS.  Also, appellant has not shown that Brown was available to testify and
that his testimony would have benefitted the defense.  Perez, 310 S.W.3d
at 894.

Appellant
also contends that trial counsel should have called his sister, Griffith, as a
witness.  Griffith testified at the hearing on appellant’s motion for new
trial.  Appellant asserts in his brief that Griffith would have testified at
trial as follows: (1) she had a telephone conversation with appellant in the
early morning hours of June 1, 2007, and during that phone call, she heard “the
voice of a coherent and nonthreatened [PLS]” in the background; (2) Afton made
an exculpatory written statement, and trial counsel failed to secure it for use
as evidence at trial; and (3) trial counsel failed to maintain and forensically
test for use as evidence “sex toys” that Lorrell, Jessica, and PLS used on each
other at the time of the alleged incident.  Appellant has not shown that
Griffith’s testimony on these matters would have been admissible at trial.  For
example, much of Griffith’s proposed testimony appears to be inadmissible
hearsay.  Trial counsel cannot be ineffective for failing to offer inadmissible
evidence.  Coleman v. State, 188 S.W.3d 708, 724-25 (Tex. App.—Tyler
2005, pet. ref’d).

D.
Conclusion.

            Appellant
has not shown that his trial counsel rendered ineffective assistance of
counsel.  Nor has he shown that there is a reasonable probability that the
result of the proceeding would have been different but for trial counsel’s
alleged deficient performance.  The trial court did not abuse its discretion by
denying appellant’s motion for new trial.  Appellant’s points of error are
overruled.

This
Court’s Ruling

            The judgment of the
trial court is affirmed.

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

             
                                                        

March 24, 2011

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.